# WHARTON, Ex'r, vs. CUNNINGHAM.

[ACTION ON PROMISSORY NOTES.]

1. *Evidence must be relevant to issue.*—The evidence must be relevant to the issues, or some one of them. It must tend to prove the facts alleged in the pleas. Evidence by one of the parties to a contract, that a sum of money mentioned therein was *understood* by *one* only of the parties to the contract that it should be discharged by a payment in Confederate currency or treasury-notes, will not be competent under the issue on a plea that it was understood and agreed by *both* the parties to the contract that it might be discharged by a payment in Confederate currency or treasury-notes.

2. *Contract dischargeable by payment of Confederate money ; measure of damages for breach of.*—In estimating the damages on a contract for payment of a sum of money in Confederate currency or treasury-notes, the true criterion is the value of the property sold, in lawful money, at the date of the sale, and not the value of the Confederate currency at the time the debt becomes due.

3. *Act of February* 14, 1870 ; *is constitutional and retroactive.*—A bill of exceptions signed by agreement of the parties on the 8th of June, 1869, before the passage of the "act relating to bills of exceptions," approved

Wharton, Ex'r, v. Cunningham.

February 14, 1870, is made good by that act. This law has a retroactive effect ; and it regulates a matter of practice and does not impair vested rights.

APPEAL from Circuit Court of Etowah.
Heard before Hon. W. L. WHITLOCK.

This is an action at law commenced by summons and complaint, issued on the 16th day of October, 1866. Wharton, executor, was plaintiff below, and Cunningham and others, were defendants. There was a judgment, on verdict, for the plaintiff, but for a much less sum than that claimed in the complaint. From this judgment said plaintiff takes this appeal. The other facts upon which the case turns are sufficiently set out in the opinion of the court.

There was a motion in this court to strike the bill of exceptions from the record, on the grounds that it had not been signed as required by the Revised Code, and was not saved by the provision of the act of February 14, 1870 "relating to bills of exceptions."

WALKER & MURPHEY, for appellants.—1. The motion to strike out the bill of exceptions should not prevail. It is not governed by the law of the Code. The act of the 14th February, 1870, "relating to bills of exceptions," gives it validity. This act, by its terms, is made to apply "to judgments heretofore rendered and bills of exceptions heretofore signed." This is the very language of the law. That this law is retrospective does not, on that account, make it unconstitutional and void. Retrospective laws are valid, unless they infringe the constitution by impairing the obligation of contracts, are ex post facto, or take property of the citizen without due process of law.—Revised Code, § 2760; Acts, 1869, 1870, p. 99; Saterlee v. Matthewson, 2 Peters, 380 ; Sedgwick on Stat. and Const. Law, 198, 202 ; Cooley's Const. Limit. p. 369, 370, 371, 373, 381, 375 ; Colder v. Bell, 3 Dall. 386 ; Watson v. Mercer et al., 8 Peters, 88.

2. This statute affects only the remedy. It merely wipes

away an impediment to judicial proceedings, which tend to promote justice and the accomplishment of the wishes of the parties. It divests no vested right, which is founded on the agreement of the parties or a judgment of court or given by law. Such statutes in this State have never been regarded as vicious for want of conformity to the constitution. This abundantly appears from the cases mentioned below.—*Aldridge v. T. R. R. Co.*, 2 Stew. & Port. 199; *Bartlett v. Waring*, 2 Ala. 461; *Paxhall v. Whitsett*, 11 Ala. 472; *Bloodgood v. Camak*, 5 Stew. & Por. 226; Anonymous, 2 Stew. 228; *Curry v. Sanders*, 35 Ala. 280; *Daily v. Burke*, 28 Ala. 328; *Ex parte* N. E. & S. W. Ala. R. R., 37 Ala. 679; *Page and Wife v. Matthews*, 4 Ala. 547; *Weaver's Exr's v. Weavers' Creditors*, 23 Ala. 789; *Coosa River Steamboat Co. v. Barclay & Henderson*, 30 Ala. 120; *Ex parte* Pollard, 40 Ala., *Dekman v. Stiple*, 8 Wall. 595; 10 How. 396; Cooley Con. Lim. p. 107.

3. Administrator's sale or executor's sale made by order of court can not be made for Confederate money. And when a sale is made to be paid in such a currency, the value of the thing sold and not the value of the Confederate money at the time the debt falls due, is the measure of the damages.—*Hill, Adm'r, v. Erwin et al.*, 44 Ala. 661; *Herbert & Gessler v. Easton*, 43 Ala. 547.

4. Evidence of the separate understanding of one of two parties to a contract is not permissible to vary the written agreement entered into by both. There can neither be a contract or the modification of a contract without the *aggregatio mentium*. "A contract which the parties intended to make, but did not make, can not be set up in the place of one which they did make, but did not intend to make.—*Sanford v. Howard*, 29 Ala. 684.

5. The witness, Russell Jones, did not afford the proper criterion for the ascertainment of the value of the property sold. To determine this value, reference is to be had to the price which the property bears in the market at the date of the sale, and not to some speculative conclusion as to the effect of some remote cause or such value.—*Ward v. Reynolds*, 32 Ala. 384, 391.

6. The evidence of a custom to sell for Confederate money was inadmissible. The custom was illegal. Besides, there was no proof of its antiquity.—*Barlow v. Lambert*, 28 Ala. 704; *Garey v. Meagher & Co.*, 37 Ala. 630; *Petty v. Gayle*, 25 Ala. 472; *Jewell v. Center*, 25 Ala. 498; *Ala. & Tenn. R. R. v. Kidd*, 29 Ala. 221; *Steel v. McTyre*, 31 Ala. 667.

WATTS & TROY, for appellees.—1. The bill of exceptions was not signed before the adjournment of the court, or within ten days thereafter, by agreement of counsel. It should therefore be stricken out.—Revised Code, § 2760; *Kitchon v. Moye*, 17 Ala. 394; *Haden v. Brown*, 22 Ala. 572; *Buford v. The State*, 36 Ala. 270; *Union Ind. Rubber Co. v. Mitchell*, 37 Ala. 314; *Maddox v. Broyles*, 42 Ala. 436; *Alford v. Eubanks*, 44 Ala. 277.

2. The act of February 14, 1870, is unconstitutional, because it does, in fact, amend section 2760 of the Revised Code. The amended section should therefore be set out in the act.—Const. Ala. Art. 4, § 2.

3. It is also unconstitutional, because it interferes with the rights of the appellees. Does not the act perform a judicial function, by taking from one party a right he had before the law was passed, and giving the other a right in conflict with it? This should make it bad.—*Sanders v. Cabaniss*, 43 Ala. 173; *Weaver v. Lapsley*, 43 Ala. 229; *Carleton & Slade v. Goodwin*, 41 Ala. 153; *Ala. Life Ins. Co. v. Boykin*, 38 Ala. 510.

PETERS, J.—This is an action of debt, founded on three several instruments in writing, called in the pleadings promissory notes or bonds. They are payable to the appellant, as the executor of William Wharton, deceased. One is for one thousand and sixty-nine dollars and sixty cents, made on the 24th day of November, 1863; another for five hundred and eighty-one dollars and sixty cents, made on the 17th day of March, 1862; and a third for eighteen thousand, one hundred and two dollars, made on the 11th day of March, 1864. Each of said debts are pay-

able twelve months after the respective notes or bonds, by which they are secured, become due. The action was commenced in October, 1856, in the circut court of Cherokee county, and the venue changed from that county to the county of Baine, where a trial was had, and a judgment was rendered for the plaintiff below, who is the appellant in this court, for the sum of seven hundred and fifty-eight dollars and twenty six cents, damages, together with costs. From this judgment the plaintiff in the court below appealed to this court.

The record shows that there were five pleas in bar, interposed by the defendant below. They were, in substance, as follows : 1. Not guilty to all the counts in the complaint. 2. That the note first above mentioned " was given for the purchase and price of a certain mule, and other articles of personal property, purchased by defendant Cunningham, and that parties thereto *understood* or *agreed* that the same should be discharged by a payment in Confederate currency or treasury notes." 3. That the bond second above mentioned " was given for the price of a negro slave, sold by plaintiff to the defendant Cunningham, and that the parties thereto *understood* or *agreed* that the same should be discharged by a payment in Confederate currency or treasury notes." 4. That the note third above mentioned " was given for the price of certain lands, sold by the plaintiff to defendants, and that the parties thereto *understood* or *agreed* that the same should be discharged by a payment in Confederate currency or treasury notes." 5. Payment.

The bill of exceptions shows that the defendants in the court below offered evidence tending to prove that said notes were given for property purchased at a public sale, made by the plaintiff, as executor of the last will of William Wharton, deceased ; that at the sale the executor refused to give notice to the bidders that " gold and silver will be required," in payment of the debts thus contracted, but gave notice that " the property will be sold on a credit of twelve months, with interest from date ; note and approved security required. All sums under five dollars,

cash." This notice was written and published on the day of sale, before the sale commenced. It was also proven that the notes were given for the property described in the defendants' pleas. The specie value of the several items of property sold was also shown, and the difference between this value and the amount of the bids for the same. To this proof there was no objection. After this was done, the defendants' counsel asked his witness : " What kind of currency was there in circulation in the county ? " This was objected to, but the court overruled the objection, and the witness answered that " the circulation was Confederate currency." This answer was also objected to, but the objection was overruled, and the plaintiff excepted. The defendants' counsel also asked the witness Cunningham, one of the defendants, " what was his understanding as to receiving Confederate currency by the plaintiff at the sale ? " This was objected to by plaintiff, but overruled by the court, and the plaintiff excepted. The defendants then proved, against the plaintiff's objection, the value of Confederate currency at the date of the maturity of the note given for the land. And in the further progress of the trial before the jury, the court permitted the defendant to prove, against the plaintiff's objection, " that there was no express understanding between him (Cunningham) and the plaintiff that the plaintiff was to take said currency, that is, Confederate currency ; but it was his own understanding." The plaintiff moved to exclude this separate understanding of the witness, but the court refused, and the plaintiff excepted. There was much other testimony of a similar character, which was improperly let in, but it is not necessary to discuss these errors, as the principles on which the judgment in this case will rest will enable the court, in a new trial, to avoid the irregularities thus committed.

If it had been shown that the sale in this case had been made by an order of the probate court, then all the evidence establishing a sale for Confederate currency would have been improper ; for such a sale can only be made for funds which would be a legal tender in the payment of

debts.—*Hill, adm'r v. Erwin et al.*, 44 Ala. 661. But the sale in this case seems to have been made by an executor who may have derived his power to sell the property of the testator from the will, which may have conferred the authority to sell for Confederate currency or treasury notes. Such a sale, under such an authority, would be good. *Thorington v. Smith*, 8 Wall. 1. But the pleas here open the issue to let in the evidence of a payment in Confederate money, and also the proof of an *understanding or agreement* to that effect between the parties. But the proof must be kept within the limit of the pleas. It must show that both parties to the contracts sued on understood that these contracts should be discharged by a payment in Confederate currency or treasury notes. But if the understanding is between the creditor and the principal debtor, in a contest with a surety this would avail the surety as a defense. The evidence, then, that this understanding existed only on one side, is incompetent under such pleas. The court below, therefore, erred in letting in such evidence in favor of the defendants, against the plaintiff's objection. The proof must tend to support the pleas, or it is incompetent and irrelevant.—1 Phill. Ev. p. 732, (4th Amer. ed.) Hill & Cowan's notes.

The evidence which was introduced touching the currency in circulation in the county at the date the notes were made or became due, which was introduced against the objection of the plaintiff, was also irrelevant, and should not have been admitted. The court erred in overruling the objection to it.

For these errors, the cause must be remanded.

The pleas are, that it was the agreement of the parties that the notes sued on should be discharged by a payment in Confederate currency, or treasury notes. Such currency or treasury notes are not money, or a legal tender in payment of debts, but they are specific things. In estimating the amount of the recovery on such a contract, this court has heretofore laid it down as a proper rule, that " the true criterion is the value of the property sold in lawful money at the date of the sale."—*Herbert v. Gessler & Easton*,

43 Ala. 547; *Fath v. Bliss*, 43 Ala. 512. Certainly, if the contracts are not to be carried into effect as the parties made them, by allowing a payment in Confederate currency or treasury notes, then the value of the property at the date of the sale, is a much more equitable measure of the damages than the value of the Confederate currency or treasury notes at the time the debts became due. Because the property would thus always have some value proportioned to its real worth; whereas, if its value depended on the value of the Confederate currency when the debts fell due, the value thus measured might be reduced to nothing. And a sale might turn out to become a mere gift of the thing sold. This would be a monstrous rule to enforce in trust sales, however it might be considered in contracts between parties able to control the stipulations of their own agreements. Law is the science of what is good and just—*Jus est ars boni et æqui*. Then, the law could not sanction a gift where a sale was intended to be made. For, it might have happened that a sale made in 1865, the purchase-money of which might not fall due until in 1866, when Confederate money was worthless, might turn out to be a transfer of the vendor's property to the purchaser for a consideration wholly worthless, when this was not the intention of either one of the parties. Such results are not consonant with justice. This would be a wrong to the vendor. And the law does wrong to no one. *Lex nemini facit injuriam*. Then, the charge of the judge in the court below, that " the plaintiff was only entitled to recover the value of Confederate currency at the time the note became due," was incorrect and erroneous. This was not in accord with the principles and the decisions above referred to. It can not, therefore, be sanctioned.

Let the judgment of the court below be reversed, and the cause be remanded for a new trial.

[NOTE BY REPORTER.—The following opinion was delivered in response to an application for a re-hearing, and in

response to the motion to strike the bill of exceptions from the record :]

PETERS, J.—The bill of exceptions found in the record in this case is sufficiently signed to give it validity.  It is made good by the provisions of the " act relating to bills of exception," approved February 14, 1870, (Acts 1869–70, p. 99.)  Although it was signed on June 8, 1869, before the passage of this act, yet the act has a retro-active effect, and cures its deficiency in this respect.  It is an act regulating a matter of practice, and it may operate in that way.  The motion to strike it from the record is, therefore, overruled.  And the application for re-hearing is denied, with costs, and the opinion originally delivered in this case is ordered to be re-filed and adhered to.