# Hewlett *v.* Camp.

*Application for Mandamus.*

115   499
e132  331

1. *Validity of municipal ordinances; constitutional law.*—The legislature can not, by ratification, give validity to a municipal ordinance, which it could not legally, in the first instance, have authorized the municipality to adopt.

2. *Same; same; licenses.*—Where, in a schedule of licenses established by an ordinance passed by the board of aldermen of a city, there is included an occupation which is prohibited by the general laws of the State, such ordinance, in so far as it licenses said occupation, is null and void; and an act of the Legislature adopting the

[Hewlett v. Camp.]

schedule of licenses as established by said ordinance is unconstitutional and void, as violating section 50 of Article IV of the Constitution, which declares that the General Assembly has no power to authorize a municipality to pass laws inconsistent with the general laws of the State.

3. *Same; same; same; case at bar.*—In so far as the act of the General Assembly adopting the schedule of licenses established for the city of Birmingham by its mayor and aldermen legalizes the sale of pools on horse races by reason of that business being licensed in said schedule, (Acts, 1896-97, 1099), such act is inconsistent with the general statutes of the State prohibiting the sale of pools on horse races (Acts, 1888-89, p. 45; Acts, 1896-97, p. 581), and is, therefore, unconstitutional and void as violating section 50 of Article IV of the Constitution, which declares that the General Assembly has no power to authorize a municipality to pass laws inconsistent with the general laws of the State.

APPEAL from the Circuit Court of Jefferson.
Heard before the Hon. JAMES J. BANKS.

J. A. W. SMITH and W. H. SMITH, JR., for appellant. 1. The legislature may repeal a general law, and where it authorizes a municipality to license a business prohibited by the general law, the general law is thereby repealed or suspended by the legislature itself; the theory being, that it is the legislative enactment and not the city ordinance which operates the repeal or suspension of the general law, the repeal or suspension to take effect when the city ordinance is passed.—*Olmstead v. Crook*, 89 Ala. 228; *Excelsior Co. v. Lacey*, 63 N. Y. 422; *St. Johnsbury v. Thompson*, 59 Vt. 300; *In re Snell*, 58 Vt. 207; *Canfield v. Leadville*, 43 Pac. Rep. 910; *State v. Clarke*, 14 Amer. Rep. 471; *McGarty v. Deming*, 51 Conn. 422; *Palmer v. State*, 2 Oregon, 66; *Burchard v. State*, 2 Oregon, 78.

2. "The legislature may, in general, cure irregularities and confirm proceedings of municipal corporations, which, without the confirmation, would be void because unauthorized, provided such confirmation does not interfere with intervening rights."—15 Amer. & Eng. Encyc. of Law, 997, § 10, and cases cited.

3. By ratifying the ordinance, it became the act of the legislature. Any act ratified is the act of the principal, and if the principal had power to pass it, it is binding. Had the legislature enacted, as an original

[Hewlett v. Camp.]

bill, a law authorizing pool selling in Birmingham, the validity of such an act would not be questioned. The original law as passed was the act in question giving force and effect to the city ordinance. It is not an act conferring certain authority on the city to pass laws, but a law itself, making valid the ordinance thus passed. *The City v. Lamson*, 9 Wall. 477 ; *Lee County v. Rogers*, 7 Wall. 181.

ROBERT J. LOWE, *contra*.

COLEMAN, J.—In April, 1897, Thos. G. Hewlett tendered to A. J. Camp, city clerk of Birmingham, the necessary amount of money and demanded of him a license, authorizing him to engage in the business of selling pools on horse races. Upon the refusal of the clerk to issue the license, he applied by petition to the Hon. James J. Banks, Judge of the Circuit Court, for the writ of *mandamus* to compel the issue of the license. The petition having been denied by the judge of the circuit court, an appeal was prosecuted to this court.

The petitioner bases his claim upon an ordinance, adopted by the Mayor and Aldermen of the city of Birmingham on the 21st of December, 1896, declaring the schedule of licenses for the year 1897, in which schedule is included a license "for selling pools on any horse race * * * in or outside of the State ;" and an act of the legislature approved February 16th, 1897, (Acts of 1896–97, p. 1099), which reads as follows : "Section 1. Be it enacted by the General Assembly of Alabama, that the schedule of licenses as established by the board of Mayor and Aldermen of Birmingham for said city, for the year 1897 and the ordinances adopting and establishing the same are hereby in all things ratified and confirmed."

The claim is resisted upon the grounds that by a general law of the land approved February 26th, 1889, (Acts, 1888–89, p. 45), entitled, "An act for the better suppression of gambling," the very business, or acts for which the ordinance of the city provided that a license might be issued, was prohibited and declared to be a misdemeanor ; (this act was construed in the recent case of *The State v. Stripling*, 113 Ala. 120, in which its constitutionality was upheld, and its provisions applied

[Hewlett v. Camp.]

to pool selling on horse racing outside the State) ; also upon a general act approved February 5th, 1897, (Acts, 1896–97, p. 581), which specifically and literally prohibits the buying or selling of pools upon horse racing, or the making or taking what is commonly known as a book upon the running, pacing or trotting of horses, either within or without the State ; and upon section 50 of article IV of the constitution of the State which reads as follows : "The General Assembly shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of the State."

It is very clear that the ordinance, in so far as it undertook to legalize the selling of pools on horse racing, was in direct contravention of the general law of the land and was null and void.   It is equally clear that if the legislature had undertaken to authorize the municipality of Birmingham to license and legalize the selling of pools on horse racing contrary to the general law of the land, such an act would have been in violation of the constitutional provision we have quoted, and such a statute would have been null and void.

The simple question then is, has the legislature power by indirection to defeat or avoid a plain constitutional provision?   There are many decisions which hold, that the legislature may cure an irregularity or defect in the adoption of ordinances and even render valid ordinances which, without such curative legislation, would be null and void ; but we know of no well considered decision which has gone to the extent of holding that the legislature, by ratification, could give validity to an ordinance, which it could not legally in the first instance have authorized a municipality to adopt.—15 Am. & Eng. Encyc. of Law. pp. 997–98, and notes.   The constitution of the State would afford but little protection, if its provisions could be circumvented by resorting to such artifice ; and notwithstanding all the presumptions in favor of legislation, we feel quite sure, that the legislature as a body had but little, if any conception from reading either the title or the body of the act of February 16th, 1897, *supra*, that there was within its provisions what seems to have been a furtive purpose to license gambling, contrary to the general law of the land as declared in the act adopted by the same body on

[Smith v. Cox.]

the 5th of February, *supra*, just a few days prior to the act of ratification of the ordinance.

Affirmed.