[Lovejoy v. Beeson.]

# Lovejoy *v.* Beeson.

## *Contest of Election of Probate Judge.*

1. *Office of probate judge; not the subject of vested rights.*—The office of probate judge is a public office created for governmental purposes and not for the sole benefit of any single person; it cannot become the subject of vested rights.

2. *Legislature; its power to ratify things done.*—What the legislature may lawfully do in the first instance it may ratify after the thing has been done, if no contract or property rights are involved.

3. *Same.*—The provision of our constitution that all election laws "shall be uniform throughout the State,' does not prevent the legislature from ratifying an election held in a place not provided by law.

APPEAL from the Circuit Court of Etowah.
Tried before the Hon. JAMES A. BILBRO.
The facts of this case are stated in the opinion.

DORTCH & MARTIN, for appellant, cited, on the power in the legislature to ratify the election, Cooley on Con. Lim. 6 ed. 457; 52 Ala. 79; 21 Fed. Fed. Rep. 99; 87 Fed. Rep. 630; 44 Ia. 639; 87 Ind. 17; Myer on Vested Rights 138; 1 Hill 324; 6 Ia. 305; 87 Fed. Rep. 630.

(1). DENSON & TANNER, *contra,* contended, that the act of the legislature ratifying the election is unconstitutional. The constitution requires the legislature to establish a probate court for each county; and that judges of probate shall be *elected* by the qualified electors of the county; the election is the source of the title or right to the office.—*Hill v. State,* 1 Ala. 559; *Wamack v. Holloway,* 2 Ala. 31; *Thompson v. Holt,* 52 Ala. 502. (2). It is a constitutional office and unless in case of vacancy must be filled by election.—*Lindsay v. U. S. Savings & Loan Co.,* 24 So. Rep. 171; *Ala. Life Ins. Co. v. Boykin,* 38 Ala.; *Sanders v. Cabaniss,* 43 Ala. 173; *Weaver v. Lapsley,* Ib. 231; *Hailey v. Clark,* 26 Ala. 439; Cooley

Con. Lim. 105 *et seq.; Hailey v. Phil'a,* 8 Am. Rep. 153; *Salter v. Tobias,* 3 Paige, Ch. 338. (3). To enforce the act of the legislature in question would destroy vested rights.—*Hoke v. Henderson,* 25 Am. Dec. (4). The act is retroactive and this is not a case for legal retroactive legislation.—Cooley's Con. Lim. 457. (5). The courts having decided the election illegal the legislature cannot by subsequent acts legalize it.—*Dash v. Van Kleeck,* 5 Am. Dec. 291; *Deeny v. Mattoon,* 2 Allen 261; *Conway v. Cable,* 37 Ill. 82; *Stephens v. Smith,* 10 Wall. 321; *Frederick v. Gray,* 12 Kan. 578.

DOWDELL, J.—The appeal in this case is taken from the circuit court of Etowah county on a statutory contest of election of probate judge. The ground of contest being, that the election held in Gadsden precinct in said county was invalid for the reason that it was held in a place other than the court house as required by law. This is the sole ground, and there is no pretense that there was any fraud or unfairness in the holding of said election, or that any voter was prevented from voting, or failed to vote, by reason of the failure to hold the election in the court house. Since the institution of this contest and the appeal to this court the legislature has by an act approved Dec. 14th, 1898, cured the irregularity, as it is termed, and ratified and confirmed the election as held, on the first Monday in August, 1898, in said Gadsden precinct. This act of the legislature is assailed by the appellee as being unconstitutional, in that it disturbs vested rights, and, also, for that it is offensive to section 5, article 8 of the constitution, which provides, "The general assembly shall pass laws, not inconsistent with this constitution, to regulate and govern elections in this State, and all such laws shall be uniform throughout the State."

We think it a clear proposition that the act does not in any manner interfere with vested rights. The office of probate judge is a public office created for governmental purposes, and not for the sole benefit of any single person. It cannot in any sense or manner ever be said to become the subject of property rights. "It has in it no element of property. It is not alienable or inheritable.

[Lovejoy v. Beeson.]

It is a personal public trust, created for the benefit of the State, and not for the benefit of the individual who may happen to be its incumbent."—*Ex parte Lambert,* 52 Ala. 82.

For the same reasons, it may be said, it cannot be the subject of contract rights. Being, therefore, neither the subject of property or contract rights, the suggestion, that the act in question, is an invasion of vested rights, is unsupported by reason or agument.

It is true the act falls under the class of statutes denominated retrospective laws. As to such in the absence of any express constitutional inhibition, and where contract or property rights are not involved, and only public rights, as of public office, are involved, the power of the legislature is full and complete. In matters of public concern affecting governmental interests in carrying out the will of the people, legislative action becomes of the highest importance, and the courts should not by any narrow construction, obstruct the attainment of the ends and purposes of the law-making power. There can be no doubt of the power of the legislature to enact laws which may modify or affect the results of prior transactions. It seems to be a well settled rule, where contract or property rights are not involved, that what may be authorized by the legislature in the first instance, may after the thing done be ratified by the legislature. Mr. Cooley, in his work on Constitutional Limitations, treating of the subject of retrospective laws, gives the following as the substantial rule applicable in such cases: "If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." Cooley's Con. Lim. (6th ed.) p. 457.

Could the legislature, in the first instance, have designated another place than the court house, for holding

the election in Gadsden precinct? The power to have done so we think is beyond question. The power of designating the voting places in other precincts than the court-house precinct, is by the statute conferred on the court of county commissioners. Could not the legislature by the same statute have conferred on the court of county commissioners the power to designate the voting place in the court house precinct as well as in other precincts? This question can only be answered in the affirmative. And if left with the commissioners, might they not designate another place within the precinct for voting, other than the court house? If this be true, it suffices, also, to show, that the argument of counsel that fixing a different place than the court house in the court house precinct, would be offensive to the provisions of section 5, article 8 of the constitution as to uniformity of the election laws, is without merit. The commissioners' court of one county might designate the court house, as the voting place in such precinct, while in another county the commissioners' court might well designate a different place than the court house, and no one could reasonably contend that such would be violative of the above mentioned provision of the constitution. It is a logical conclusion, that if it be competent for the legislature to confer upon the court of county commissioners the power to designate the voting places in the respective counties, and such voting places so designated, may differ as to the precise locality or *house* appointed, without offending against the constitution, then it would certainly be competent for the legislature in the first instance, to designate different places within the precincts in different counties. It, also, follows, that things which can be authorized by the legislature in the first instance, can after they are done be subsequently ratified by the legislature. We cite the following authorities as supporting the principles above laid down: *Williams v. Board of Supervisors,* 21 Fed. Rep. 99; *Erskine et al. v. Steele County,* 87 Fed. Rep. 630; *Huff v. Cook,* 44 Iowa 639; *Gardner et al. v. Haney,* 86 Ind. 17; *Butler v. Palmer,* 1 Hill. 324; *McMillen et al. v. Bayles,* 6 Iowa 304.

It is, therefore, our conclusion, that the act approved Dec. 14, 1898, is not violative of any constitutional provision, and by it the irregularity attending the holding of the election in Gadsden precinct on the first Monday in August, 1898, was cured. This view of the case renders it unnecessary to consider the other questions raised by the appellant relating to matters prior to the enactment of the above healing statute, and which were so ably argued in briefs of counsel.

The ground of contest having been cured by the statute, a reversal of the judgment of the circuit court must follow, and a judgment will be here rendered dismissing the contest.