(90 South. 781)

### BOARD OF REVENUE OF JEFFERSON COUNTY et al. v. HEWITT.
### (6 Div. 233.)

(Supreme Court of Alabama. June 30, 1921. Rehearing Denied Oct. 6, 1921.)

1. **Statutes** ⚫➡161(1)—**Later acts repeal by implication former where of same nature and on same subject in the same field of operation.**

If two acts are of the same nature and on the same subject, the later repeals the former by implication if there is no different field of operation; that is, if it is obvious from the legislative proceedings and purport of the two acts that neither branch of the Legislature conceived a conflict, or entertained any purpose other than their harmonious co-operation within their respective fields.

2. **Counties** ⚫➡182—**Act relating to bonds held not repealed by subsequent act.**

Act Oct. 8, 1920 (Gen. Laws Sp. Sess. 1920, p. 116), prescribing the rate of interest on bonds and requiring them to be sold for not less than par with accrued interest, *held* not to impliedly repeal Act Oct. 6, 1920 (Gen. Laws Sp. Sess. 1920, p. 166), relating to the sale and disposition of bonds in certain counties; the purpose and field of operation of the acts being different.

3. **Statutes** ⚫➡109—**What are the requirements as to subject and title stated.**

Under the requirements of Const. 1901, § 45, as to subject and title of statutes, it does not matter how numerous the subjects stated in the title and however numerous the provisions in the body of the act may be. if they can by fair intendment be considered as falling within the general subject-matter, the act is not in violation of the provision.

4. **Statutes** ⚫➡120(4)—**County bond act held sufficient as to subject and title.**

Act Oct. 6, 1920 (Gen. Laws Sp. Sess. 1920, p. 166), relating to the manner of sale of county bonds and to reimbursement of contractors who have advanced money to the county, *held* not to violate Const. 1901, § 45, relating to subject and title.

5. **Statutes** ⚫➡4—**What statutes subject to curative acts stated.**

A statute intended by the Legislature to give legal effect to a past act, contract, conveyance, transaction, or the exercise of power, which is ineffective because of failure of compliance with a necessary requirement, may be validated when the Legislature originally had authority to confer the powers or to authorize the act or transaction, provided the curative statute does not impair vested or contract rights, or validate an unconstitutional statute or proceeding, or take away a cause of action

or destroy an existing defense to a cause of action after suit has been commenced, or revive a right or remedy barred by time or statute.

**6. Municipal corporations ⊙⊸72 — Legislature may compel payment of debts not binding, but which are just and supported by moral obligation.**

As to ratification or validation of invalid bonds and obligation of financial interest, the general rule is that, though the Legislature cannot compel a municipal corporation to make a mere gratuity, it may compel such body to pay debts not binding in law, but which are just and equitable and supported by moral obligation.

**7. Statutes ⊙⊸263—Statute not construed to be retroactive unless such intent clearly appears.**

The courts will not construe an enactment to control or affect past transactions or matters, unless the Legislature expresses a clear and indisputable intention to give it retroactive operation.

**8. Counties ⊙⊸178—Retroactive statute for sale of bonds at less than their face value and for reimbursement of contractors making advances for differences between market and face value held invalid.**

Act Oct. 6, 1920 (Gen. Laws Sp. Sess. 1920, p. 166), providing for the sale of county bonds at less than their face value and for reimbursement of contractors who had advanced to the county the difference between the market and face value of the bonds, violates Const. 1901, § 222, requiring a majority of electors to authorize a bond issue under a general law, in that it changes the material conditions or authority given by an election as to bonds already authorized on different conditions under the general law (Code 1907, §§ 158–174).

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by R. G. Hewitt, a citizen and taxpayer, against the individuals composing the Board of Revenue of Jefferson County, to enjoin the issuance by them of a warrant for $50,000 under the pretense that the same was issued to brokers in payment of brokerage for the sale of certain bonds, when in fact it was the repayment of the discount for which the bonds were sold. From a decree overruling demurrers to the bill, respondents appeal. Affirmed.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellants.

Acts Special Session 1920, p. 166, is not violative of article 4, § 45, Const. 1901; 52 Ala. 238; 127 Ala. 1, 28 South. 791, 85 Am. St. Rep. 68; 134 Ala. 392, 32 South. 687; 136 Ala. 185, 33 South. 890; 124 Ala. 253, 27 South. 19, 82 Am. St. Rep. 166; 145 Ala. 104, 40 South. 203; 166 Ala. 226, 51 South. 978; 200 Ala. 475, 76 South. 417; 180 Ala. 489, 61 South. 368; 13 Bush (Ky.) 681; 8 Idaho, 310, 68 Pac. 295, 101 Am. St. Rep. 201; Lewis'

Sutherland Statutory Construction, §§ 127, 129, 131, 134. Said act does not violate section 94 of the Constitution. 89 Ala. 641, 8 South. 30, 9 L. R. A. 497; 174 Ala. 179, 56 South. 802; 193 Ala. 166, 69 South. 527; 52 Ala. 238.

London, Yancey & Brower, of Birmingham, for appellee.

Act Oct. 6, 1920 (Acts 1920, p. 166), was repealed by Acts 1920, p. 116. 205 Ala. 623, 88 South. 442. The act is violative of section 45. 120 Ala. 156, 24 South. 171, 42 L. R. A. 783; 200 Ala. 315, 76 South. 81. The act clearly violates section 94 of the Constitution.

THOMAS, J. The bill was filed against the members of the board of revenue of Jefferson county, Ala., to enjoin the issuance of county warrants. Demurrer thereto and motion to dissolve were overruled.

The practical phase of the case for the county is well stated by its counsel:

"The county of Jefferson, at the time of the sale of the bonds, was in this predicament: The law at that time forbade the sale of the bonds at less than par. The rate of interest authorized by law was such that no purchaser for the bonds could be found who was willing to take them at par. A grave emergency presented itself in that the county authorities, in the confident expectation that the bonds could be sold, had entered into many contracts for the building of public roads involving large amounts of money. Without the sale of the bonds the work could not go on, and, in that event, the county would be confronted not only with suits for breach of contract, but the work already done on the roads, being in an incomplete state, was subject to deterioration and waste, which would probably have entailed an enormous loss upon the county. Accordingly these contractors advanced to the county the sum of $50,000 so that it might have in the treasury the full amount of $500,000 or the face value of the bonds to be sold. They made the advance in the expectation that the county would keep faith with them and not allow them to suffer loss. The Legislature has recognized this obligation resting upon the county and has authorized the board of revenue to repay to these contractors the amount which they advanced for the county's benefit."

In Wallace v. Ball, 205 Ala. 623, 88 South. 442, this court said:

"The act of October 8, 1920, was passed and approved two days after the act of October 6, 1920. Both being on the same subject, the last one repeals the first one."

[1] We must look to the legislative intent to ascertain whether repeal by implication was intended. Board of Revenue v. Johnson, 200 Ala. 533, 76 South. 859. If two acts are of the same nature and upon the same subject, the latter repeals the former by implication, if there is no different field of operation; that is, if it is obvious from

the legislative proceedings and purport of the two acts that neither branch of the Legislature conceived a conflict, or "entertained any purpose other than their harmonious co-operation within their respective fields." Board of Revenue v. Johnson, 200 Ala. at page 535, 76 South. at page 861; Wallace v. Ball, supra. These two acts are to be found in Acts 1920, pp. 116, 166.

Such conflict, not being shown by the legislative history of the two acts, is as follows: (1) Senate Bill No. 21, by Mr. Acker, of Calhoun county, was introduced in and passed the Senate on September 15, 1920; was sent to the House on the 17th; received in the House on the 21st; passed on October 1st; signed by the presiding officer of the Senate and House on that date; was received in the office of the Governor at 5:50 p. m. the same day; and approved by him on the 8th. (2) Senate Bill No. 126, by Mr. West, of Jefferson county, was introduced in the Senate on September 23, 1920; passed on the 27th; sent to the House on the same day; passed October 1st, and signed by the presiding officer of the Senate and House; was transmitted to the Governor on October 2d at 7:05 p. m., and approved on October 6th. The mere act of the Governor in giving his assent and approval to such expression of the legislative intent and will, by affixing his official signature thereto on different days in no wise changed the legislative intent.

The purpose and field of operation of said acts are different. That approved October 6th, the West Act, relates to the manner of sale and disposition of bonds in counties having, according to the census specified, 150,000 inhabitants or more (Jefferson county being of that class), said sale in no case to be "below ninety-five (95%) per cent. of the par value," etc. That approved October 8th (by Mr. Acker) prescribes the rate of interest to be paid on the bonds of counties, cities, and towns of the classes indicated, and requires the bonds to be sold for not "less than par, with accrued interest to date of delivery," when the discount is considered as a part of the interest. The act of October 6th, as we have indicated, provides not only that bonds of counties or municipalities of the class indicated shall be sold at the best price obtainable, not to be below 95 per cent. of the par value, but that courts of county commissioners or boards of revenue may reimburse out of the proceeds of such sales "contractors who, within nine months prior to the approval of the act," have paid into its treasury "money equivalent to the difference between the market price and face value of bonds sold." The act of October 8th is merely a regulation of the rate of interest to be paid for the whole period on bonds of a county, or a municipality—meaning town and city bonds to which the act was applicable—stipulating that

the rate of interest on bonds issued by counties and cities with a population of over 5,000 shall not exceed 7 per cent. per annum, that bonds by towns and cities of less than 5,000 inhabitants shall not bear a rate of interest exceeding 8 per cent. per annum, and that such rate shall not be increased by a sale of the bonds below par. The act of October 6th is limited by its terms to county and municipal bonds of the class of counties indicated, regulates the manner of notice for bids and notice of sale, and provides for distribution of a portion of the proceeds of such sale. The policy of this act is to provide for a sale of bonds by counties and municipalities of the class indicated at the discount permitted, and then to throw around such sale reasonable provisions conducive to the obtaining of the best price possible for the sale of the bonds, and to equalize the price or to make just distribution of the proceeds so as to recognize and discharge any moral obligations due by the county to contractors who, within nine months prior to the approval of the act, had paid into the treasury of such bodies money equivalent to the difference between the market price and the face value of the bonds to aid the county in the sale of its bonds and to enable it to proceed without delay or interruption in the prosecution of the purposes for which the bond issue was authorized. No such provision for equalization and reimbursement is contained in the act of October 8th.

If it be necessary to further pursue the comparison of these acts, it may be noted that the only features in common are provisions for retroactive effect; that each shall become effective upon approval. The repealing of all laws or parts thereof in conflict and conditions precedent for notice are fundamentally different in each act. That of October 6th (applying to Jefferson and like counties or municipalities) is that the bonds may be sold only after a double advertisement: (1) For bids invited in an advertisement "published [for ten successive days] in some daily newspaper" in the municipality or county to issue such bonds; and (2) that the sale may not be made "until the names of the bidders and the amounts of their bids shall have been advertised for ten successive days in such newspaper." Under the act of October 8th the municipality (whether county or of the class of towns or cities provided for) desiring to sell at private sale its bond or bonds was required to give notice thereof "by publication once a week for two consecutive weeks, in a newspaper published in the county," if there be such newspaper, and, if there be no newspaper published in the county, then notice of such sale shall be given by posting in three public places for two weeks; and, if the bonds are that of a city or town, said notice should be published or posted in that

municipality as required. The nature and contents of the notice required of such a private sale was that it shall contain a statement of the amount of bonds to be sold, the rate of interest they are to bear, the date and maturity of the bonds, and the terms and conditions under which they are to be sold. No provision for private sale of bonds or of the contents of the notice to be given is contained in the act of October 6th. For such requirements recourse must be had to other acts. The "West Act" had the effect of dividing the counties of the state into two classes in respect of the matter dealt with, and as having 150,000 inhabitants or more; and the act of Mr. Acker had application in counties of a less population than 150,000.

[2] There being separate fields of operation for the two acts, and the respective legislative history of each not disclosing the intent of conflict, the act last approved by the Governor did not repeal by implication that approved on October 6th. It is then necessary to consider whether the retroactive provision of the act of October 6th is offensive to the organic law, it being provided therein that, if any section of the act be declared unconstitutional, it shall not have the effect to invalidate valid sections thereof. If it be held that there are provisions in this act that are offensive to the Constitution, is the integrity of the act so impaired as to render it unconstitutional? B. R., L. & P. Co. v. Kyser, 203 Ala. 121, 82 South. 151; Wilkinson v. Stiles, Judge, 200 Ala. 279, 76 South. 45; State ex rel. Collman v. Pitts, 160 Ala. 133, 139, 49 South. 441, 686, 135 Am. St. Rep. 79; Lewis' Sutherland on Stat. Const. § 306.

The title of the West Act is plain, unambiguous, and unequivocal, informing the Legislature and the public that a reasonable classification of the kind theretofore approved by this court (Reynolds v. Collier, 204 Ala. 38, 85 South. 465) was to be made to apply to Jefferson and other counties that might come within the class, respecting the sale of its bonds and equalization of the distribution or application of the proceeds to the purposes and ends authorized by the law of its issue. The title gives notice of the classification of counties which might dispose of bonds for less then their face value and "reimburse contractors who have within nine months paid into the county treasury of such counties, the equivalent of the difference between the market value and the face value of such bonds." The body of the act strictly conformed to its title. The scope or field of the provision for reimbursement to contractors was a declared or expressed legislative intent that such provision be given only retroactive operation, and met the requirements for such curative statutes, as recently declared in Barrington v. Barrington, 200 Ala. 315, 316,

76 South. 81, and authorities there collected.

There is little necessity to discuss whether the act of October 6, 1920, is violative of section 45, art. 4, of the Constitution, requiring that "each law shall contain but one subject, which shall be clearly expressed in its title," except as therein provided. Henry v. State ex rel. Welch, 200 Ala. 475, 76 South. 417; State ex rel. Mobile v. Board, etc., 180 Ala. 489, 61 South. 368; Allman v. Mobile, 162 Ala. 226, 50 South. 238; Blue v. Everett, 145 Ala. 104, 40 South. 203; Ellis v. Miller. 136 Ala. 185, 33 South. 890; Mitchell, J., v. State ex rel. Florence Dispensary, 134 Ala. 392, 32 South. 687; Sheppard v. Dowling, 127 Ala. 1, 28 South. 791, 85 Am. St. Rep. 68; A. G. S. Ry. v. Reed, 124 Ala. 253, 27 South. 19, 82 Am. St. Rep. 166; Bell v. State, 115 Ala. 87, 22 South. 453; C. C. of Montgomery v. Nat. B. & L. Ass'n, 108 Ala. 336, 18 South. 816; State ex rel., etc., v. Rogers, 107 Ala. 444, 452, 19 South. 909, 32 L. R. A. 520; Ballentyne v. Wickersham, 75 Ala. 533; State v. Mattox Cigar & Tobacco Co., 201 Ala. 229, 77 South. 755; Herrmann v. Mobile Co., 202 Ala. 274, 80 South. 112.

[3] The interpretations of such requirements of the Constitution are to the effect that it matters not however numerous the subjects stated in the title and however numerous the provisions in the body of the act may be, if they can be by fair intendment considered as falling within the general subject-matter and under such conditions embraced therein, the act is not violative of the constitutional provisions indicated. Allman v. Mobile, supra. It is sufficient if the provisions of an act are referable and cognate to the subject expressed; and, when the subject is expressed in general terms, everything which is necessary to make a complete enactment in regard to it or which results as a complement of the thought contained in the general expression is included and authorized by it. The subject may be as broad and comprehensive as the Legislature may choose to make it, and may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form one comprehensive subject. C. C. of Montgomery v. Nat. B. & L. Ass'n, supra; Bell v. State, supra; State v. Street, 117 Ala. 203, 23 South. 807; A. G. S. Ry. v. Reed, supra; Leonard v. Lyons, 204 Ala. 615, 87 South. 99; Hasty v. Marengo County Bank, 204 Ala. 229, 86 South. 37; Shoemaker v. State, 17 Ala. App. 461, 86 South. 151; Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 South. 774; Dunning v. Holcombe, 203 Ala. 546, 84 South. 740; Pillans v. Hancock, 203 Ala. 570, 84 South. 757; Ex parte Johnson, 203 Ala. 578, 84 South. 803; Dowda v. State, 203 Ala. 441, 83 South. 324; Dodd v. Comm. Ct. St. Clair Co., 203 Ala. 271, 82 South. 521; State ex rel. Winter v. Sayre, 118 Ala. 1, 24 South. 89; McDavid v. Bank of Bay

Minette, 193 Ala. 341, 69 South. 452; Birmingham-Tuscaloosa, etc., Co. v. Carpenter, 194 Ala. 141, 69 South. 626; Board, etc., Jefferson Co. v. Huey, 195 Ala. 83, 92, 70 South. 744; State ex rel. Mims v. Bugg, 196 Ala. 460, 71 South. 699; Grambs v. Birmingham, 202 Ala. 490, 80 South. 874.

In Allman v. Mobile, supra, the act reviewed (Laws 1907, p. 398), entitled "To authorize cities and towns in the state of Alabama to provide for the drainage thereof by sanitary and storm water sewers, ditches, surface drains, aqueducts, and canals; to prescribe rules and regulations for the installment of plumbing; to enforce connection with and the use of such sewers and drains, and to regulate the same," was challenged on the ground that three different subjects were embraced in the title: To authorize municipalities to provide for drainage; to prescribe rules and regulations for the installation of plumbing; and to enforce connection with and the use of drains, and to regulate the same, as pertaining to the citizens or property owners of the city affected thereby. Held, that such construction was not well founded; that, "however numerous the heads stated in the title and however numerous the provisions of an act may be, if they can be by fair intendment considered as falling within the subject-matter legislated upon in the act, or necessary as ends and means to the attainment of such subject, the act is not in conflict with a constitutional provision that no law shall embrace more than one subject, which must be expressed in its title;" that "the title may be so written as to form an index to the provisions of the body of the act; * * * if only one subject-matter is the essence of the act, and its provisions are referable and cognate to the general subject, the constitutional mandate is not violated."

In Ellis v. Miller, supra, construing an act "To authorize and require the commissioners' court of Walker county to set apart and appropriate money from the general fund of said county with which to pay and discharge certificates of state witnesses hereafter issued by the foreman of the grand jury and by the clerk of the circuit or county court of said county, fees which by law become a good claim against the fine and forfeiture fund of said county, after the approval of this act and to regulate the manner of said payments and to fix the amount of said witness fees," held not offensive to section 2, art. 4, of the Constitution of 1875 (so far as the provisions now under consideration are concerned), being the same as section 45 of the Constitution of 1901.

The case of Blue v. Everett, supra, was as to the constitutionality of an act "To amend an act to establish the county court of Coffee for Coffee county," defining the jurisdiction of the county court of Coffee county, and providing for the restoration to justices of the peace and notaries public exercising the powers of justices of the peace jurisdiction of all misdemeanors, which jurisdiction had been taken away from such officials by prior act. Held not two distinct and independent subjects in the act. The dispensary acts were construed in Mitchell v. State, supra, and Sheppard v. Dowling, supra, and, though containing different legislative provisions, held not within the inhibition of constitutional provisions, since the various provisions were cognate and related to the several subjects dealt with.

[4] The provisions of the act of October 6th were not offensive to the provisions of section 45 of the Constitution.

Thus we are brought to the primary question for decision: Under the principle that subsequent legislative ratification is the equivalent of primary legislation, did the Legislature by this act undertake to ratify (to the extent indicated) the sale of bonds, made in accordance with the law then existing, for their face value, where contractors had advanced the equivalent between the face and market value of the bonds to make a lawful sale thereof, and to enable the contractors and the county to continue the prosecution of the work of maintenance and construction of public roads for which said bond issue was authorized. The principle of subsequent legislative ratification was adverted to in Greil v. Stollenwerck, 201 Ala. 303, 78 South. 79; Brannan v. Henry, 175 Ala. 454, 57 South. 967; State ex rel. Atty. Gen. v. L. & N. R. R. Co., 158 Ala. 208, 48 South. 391; Lovejoy v. Beeson, 121 Ala. 605, 25 South. 599; Hewlett v. Camp, 115 Ala. 499, 22 South. 137; Perry v. N. O., H. & C. R. R. Co., 55 Ala. 413, 418, 28 Am. Rep. 740; Wharton v. Cunningham, 46 Ala. 590; Lockhart v. Troy, 48 Ala. 579.

[5] The extent and effect of retroactive or curative statutes have been the subject of interesting discussion by the courts. It may be said that a statute intended by the Legislature to give legal effect to a past act, contract, conveyance, transaction, or the exercise of power, which is ineffective because of failure of compliance with a necessary requirement, may be validated when the Legislature "originally had authority to confer the powers or to authorize the act or transaction," etc. (Cooley's Const. Lim. [6th Ed.] p. 454 et seq.; 1 Dillon, Municip. Corp. [5th Ed.] § 129, p. 231; Chuoco Tiaco v. Forbes, 228 U. S. 549, 33 Sup. Ct. 585, 57 L. Ed. 960; Ex parte Buckley, 53 Ala. 42, 53; Courtner v. Etheredge, 149 Ala. 78, 43 South. 368; Lovejoy v. Beeson, supra; State ex rel. v. L. & N. R. R. Co., supra; Brannan v. Henry, supra; State, etc., v. M. & O. R. R. Co., 190 Ala. 409, 67 South. 286; Lockhart v. Troy, supra; People v. Lynch, 51 Cal. 15, 21 Am. Rep. 677; Whitlock v. Hawkins, 105 Va. 242, 53 S. E. 401), provided the curative statute does not have the effect of impairing vested

or contract rights (Const. § 95; Wharton v. Cunningham, supra; Shattuck v. Byford, 62 Ark. 431, 35 S. W. 1107; Barrett v. Barrett, 120 N. C. 127, 26 S. E. 691, 36 L. R. A. 226; Hall v. Perry, 72 Mich. 202, 40 N. W. 324), or of validating an unconstitutional statute or proceeding (Lockhart v. Troy, supra; Hewlett v. Camp, supra; Southern Exp. Co. v. City of Tuscaloosa, 132 Ala. 326, 31 South. 460; People v. Lynch, supra; Marshall v. Silliman, 61 Ill. 218; Minn. Sugar Co. v. Iverson, 90 Minn. 6, 95 N. W. 1133), or of taking away a cause of action or destroying an existing defense to a cause of action after suit has been commenced, or of reviving a right or remedy which may have been barred by lapse of time or by statute (Const. 1901, § 95; Brannan v. Henry, supra. See, also, 8 Cyc. 1023. And in this jurisdiction statutes curing irregularities in a prior election have been held valid. Lovejoy v. Beeson, supra; Scheuing v. State ex rel. Atty. Gen., 177 Ala. 162, 167, 59 South. 160.

[6] As to ratification or validation of invalid bonds and obligation of financial interest, the general authorities are that, though the Legislature cannot compel a municipal corporation to make a mere gratuity, it may compel such body to pay debts not binding in law, but which are just and equitable in character and supported by moral obligation. The general decisions are collected in 19 R. C. L. pp. 724, 1025, §§ 32, 317; and in this jurisdiction are Allen v. Lafayette, 89 Ala. 641, 8 South. 30, 9 L. R. A. 497; Gen. Elec. Co. v. Town of Ft. Deposit, 174 Ala. 179, 56 South. 802; Sales-Davis Co. v. Henderson-Boyd Lbr. Co., 193 Ala. 166, 172, 69 South. 527.

[7] It is perhaps unnecessary to advert to the rule that, where the Legislature may enact with a retroactive effect, the courts will not construe the enactment to control or affect past transactions or matters unless the Legislature expresses a clear and indisputable intention to give the enactment retroactive operation, since the legislative purpose of retroactive effect as to the disbursement sought to be authorized to contractors (within the time indicated) is clearly apparent on the face of the act and in the notice given in its title. Wetzler v. Kelly, 83 Ala. 440, 3 South. 747; New Eng. Mortg. Security Co. v. Board of Revenue, 81 Ala. 110, 1 South. 30; Smith v. Kolb, 58 Ala. 645; Barnes v. Mayor of Mobile, 19 Ala. 707; Duy v. Ala. West. Ry. Co., 175 Ala. 162, 170, 57 South. 724, Ann. Cas. 1914C, 1119; Barrington v. Barrington, supra. Was the act of October 6th such as that the Legislature had original authority to enact and confer the powers therein sought to be conferred on such county courts and boards, as applied to an issue of bonds theretofore authorized on different conditions?

In the present case the contractors advanced to the county of Jefferson the sum of $50,000 to effectuate a sale of its bonds. The proceeds of the sale and the $50,000 furnished by the contractors were applied by the county in the discharge of its obligations contracted and incurred in the maintenance and building of public roads. No benefit whatever is averred to have accrued to the contractors except that which resulted from the prevention of a breach of the county's contract with them, and their being permitted to carry on the work for the county which they had contracted to do, and became obligated to third parties pursuant to the discharge of such contract rights with the county. The county has received and used such moneys of these contractors, and in equity and good conscience is liable to repay it. Appellant's counsel concede that such right of the contractors was or may have been an unenforceable obligation before the passage of the act in question, but insist that the act ratified the sale of the bonds in the way that such sale was made, and authorized the county to repay the contractors the amount advanced by them to effectuate such sale in compliance with the provisions of law, and further insist that by the subsequent act it cannot be maintained that the repayment of the money so advanced by the contractors and used for the benefit of the county was a grant of public money to the aid of an individual.

[8] Pursuant to section 222 of the Constitution, the Legislature, by the act of February 26, 1903, p. 90 et seq., and its codification as article 8, §§ 158-174, of the Code of 1907, provided by general laws for the registering at an election for vote by the qualified electors of the county on the question submitted, issuing bonds by the court of county commissioners or boards of revenue. Provisions of this statute were discussed in Weakley v. Henry, 204 Ala. 463, 86 South. 46. A correct application of the provisions of section 222 of the Constitution and of its inhibition that "no bonds shall be issued under authority of a general law unless such issue of bonds be first authorized by a majority vote by ballot of the qualified voters of such county * * * voting upon such proposition" was made in Wallace v. Ball, supra. The retroactive feature, for reimbursement to contractors (of the nine months' class) who had participated in the county bond sale authorized on other conditions than that provided in the curative act, if applied to a bond issue authorized as provided by the Constitution and the law on different conditions or terms than that provided in the act, would not only be amendatory of the statute requiring a specified notice of the election authorizing the issue and "the maximum rate of interest proposed to be paid" (Code, § 160), and of the requirement that the court or board governing the county's affairs shall fix "the rate of interest to be paid on the same (Code, § 170), but offends the spirit and terms of section

222 of the Constitution. The aforesaid statutory requirements may have been originally modified before action taken thereunder by the people and by the Legislature before action taken thereunder by the people. Hence it was subject to amendment by the retrospective provision of the act of October 6th, were it not for the mandate contained in section 222 of the Constitution. As affecting the bond issue already authorized on different conditions by the electorate of Jefferson county, it may not change the material conditions or the authority given by the election.

On this point we adhere to the decision in Wallace v. Ball, supra. The decree of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, and GARDNER, JJ., concur.

MILLER, J., concurs in the result.