## Hoffmeister, Appellant, *v.* Pennsylvania R. R.

*Negligence—Railroads—" Stop, look and listen "—Grade crossing—Place of sudden peril.*

Plaintiff's decedent was killed at a public grade crossing where there were five railroad tracks. The street ran north and south almost at right angles with the railroad. On the north side, the approach of the street to the railroad, close up to the tracks, was a cut between embankments, about twelve feet in height. On the railroad, west of the crossing, about three hundred and sixty feet, was a sharp curve, beyond which an approaching train going east could not be seen. Plaintiff's wife, with three other persons, started on foot to cross the railroad at the crossing, late in the afternoon, when it was growing dark. There was testimony that by reason of the embankment nothing could be seen up or down the railroad tracks until almost on the tracks, but that, when near the tracks, the parties stopped and listened before attempting to cross; neither seeing nor hearing trains they started across the five tracks. The deceased was behind the others, following them closely; a passenger train, running at the rate of forty miles an hour from the west around the curve, struck and killed her; the headlight of the locomotive of the coming train could be seen from four to six seconds before it reached the crossing where the deceased was struck; but, before it was seen, the testimony of two witnesses was, that they were on the tracks. There was evidence on part of plaintiff that no whistle was sounded or bell rung. *Held,* that the case was for the jury.

Argued Jan. 2, 1894. Appeal, No. 298, Jan. T., 1893, by plaintiff, Harry Hoffmeister, from judgment of, C. P. No. 1, Phila. Co., Dec. T., 1890, No. 148, entering compulsory non

suit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOL-
LUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for death of plaintiff's wife. Before BIDDLE, J.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*Lincoln L. Eyre, Benjamin F. Hughes* with him, for appellant.—Deceased had gone upon the railroad at a public crossing under circumstances of apparent safety. Having gotten upon the track in an ordinary way, and having actually crossed one or more sets of rails and being about to cross the last set, she was confronted, without warning, by a sudden and unforeseeable danger, against which she had to provide by an immediate exercise of her judgment between three alternatives, namely: (1) To stand still upon the track, or (2) to get off by turning back, or (3) to get off by moving forward. She chose the third alternative and was unsuccessful. Whether she could have saved herself by choosing either of the other alternatives is certainly a question which a jury alone should have decided: Moore v. R. R., 108 Pa. 349; Carroll v. R. R., 12 W. N. 348; Marland v. R. R., 123 Pa. 487; R. R. v. Mooney, 126 Pa. 244; Aiken v. R. R., 130 Pa. 382; R. R. v. Ogier, 35 Pa. 71; R. R. v. Weber, 76 Pa. 157; R. R. v. Werner, 89 Pa. 59; Schum v. Pa. R. R., 107 Pa. 8; McGill v. Ry., 152 Pa. 331; Groner v. Canal Co., 153 Pa. 390; Newhard v. R. R., 153 Pa. 417; Ely v. Ry., 158 Pa. 233; Vannatta v. R. R., 154 Pa. 262; Smith v. R. R., 158 Pa. 82.

*David W. Sellers*, for appellee.

OPINION BY MR. JUSTICE DEAN, April 2, 1894:

A public street of the city of Philadelphia, known as Hart Lane, crosses the New York division of defendants' railroad. At the point of crossing there are five railroad tracks, having a general direction east and west; the street runs north and south almost at right angles to the railroad. On the north side the approach of the street to the railroad, close up to the tracks, is a cut between embankments about twelve feet in height.

On the railroad, west of the crossing about 360 feet, is a sharp curve, beyond which an approaching train going east cannot be seen. On the 19th of November, 1890, Emma Hoffmeister, wife of plaintiff, with three others, George Stevenson, Andy Zollers and Kate Koreko, all residents of the city south of the railroad, were working for Michael Simon on a truck farm north of the railroad. About five o'clock in the evening they stopped work, and together started for home; their way was by Hart Lane, crossing over the railroad; as it took from fifteen to twenty minutes to walk from the truck field to the crossing, at that time of the year it was getting dark when they reached it. There was testimony that, by reason of the embankment, nothing could be seen up or down the railroad tracks until almost on them, but that when near the tracks they stopped and listened before attempting to cross; neither seeing nor hearing trains, they started to cross the five tracks. Emma Hoffmeister was behind the others, following them closely; a passenger train, running at the speed of forty miles an hour from the west around the curve, struck and killed her; the headlight of the locomotive of the coming train could be seen from four to six seconds before it reached the crossing where the deceased was struck; but, before it was seen, the testimony of Stevenson and Kate Koreko is, they were on the tracks. There was evidence, on part of plaintiff, that no whistle was sounded or bell rung.

The learned judge of the court below, on motion of defendant's counsel, nonsuited plaintiff, because, as given in his own words : " There is no better settled principle of law connected with accidents of negligence, numerous as they are, than this: That no matter how negligent the railroad company may be, nobody has the right to cross in the face of a moving locomotive. You cannot attempt to get across the track in the face of a locomotive, where you have had an opportunity of seeing, and then complain that the company did not sound a whistle or ring a bell. Your own contributory negligence defeats your action. Now, in this case, it is very clear that there were four people, and three of them are the only people to testify to what happened, and they testified positively that they saw the train and deliberately walked across in perfect safety. This lady had a bag of spinach on her head, and she was also notified by

these people calling to her that the train was coming, and she seems to have taken the risk of getting across, but was not so successful as the parties who did get across. It seems to me, therefore, that it presents just that case, that it was an attempt to go across in the face of a moving train. I therefore grant a nonsuit."

Neither side disputes the law as here stated, and as only the plaintiff's testimony was heard, the facts must be taken to be those of which he gave evidence. If before getting on the railroad, they saw or heard this train, and then deliberately walked across, as assumed by the learned judge, the nonsuit was properly ordered. But the testimony of Stevenson and Kate Koreko does not show this to be the fact; on the contrary, it tends to establish, with more or less positiveness, that they were on the tracks when the headlight was first seen; they escaped because a few feet in advance of the deceased, and were thus enabled to clear the track while she met her death. If the party stopped, looked and listened before going upon the tracks, then, getting no warning from the approaching train, they attempted to cross, then when on the tracks they got only four to six seconds warning from the headlight of the coming locomotive, it seems to us the question of contributory negligence was for the jury. As we read the printed testimony, the first indication of danger was the headlight, after the alleged negligence of defendant had lured them into a situation of peril; then, it was go on, stop, or turn back, and must have seemed so to them. Whether there was absence of care according to the circumstances, was peculiarly the province of the jury to decide; and so do all the cases from Pa. R. R. Co. v. Heileman, 49 Pa. 60, to Ely v. Pittsburgh R. R. Co., 158 Pa. 233, hold.

Assuming the deceased exercised care according to the circumstances, before going upon the tracks, stopped, looked and listened for a warning which it was defendant's duty to give, but which it neglected, then, was she negligent when she discovered danger was imminent after she got upon the crossing? True, she was still bound to exercise care, but care according to the circumstances, and these had changed from the time she stopped and listened before going upon the tracks; then she was in a place of safety and if defendant had given proper

warning, she was bound to hear and heed it; but, being upon a crossing, over five tracks, without negligence, then it was for the jury to say whether she was negligent in not turning back, or in not hastening her steps, or in not stopping between the tracks with a locomotive four to six seconds off.

The judgment is reversed and a procedendo awarded.