## Mosten *v.* Lake Shore & Michigan Southern Railway Company, Appellant.

*Negligence—Railroads—Grade crossing—" Stop, look and listen."*

Where a person approaches a grade crossing where there are ten tracks, early on a dark winter morning, and presumably stops, looks and listens, and when he has crossed several of the tracks, is stopped by a passing freight train which he was not able to see before, because of the darkness, and while in this position of peril is suddenly struck by a passenger train going at the rate of over fifty miles an hour, the question of the railroad company's negligence is for the jury, and a recovery for the death of the deceased will be sustained.

Argued April 29, 1907. Appeal, No. 164, Jan. T., 1907, by defendant, from judgment of C. P. Erie Co., May T., 1906, No. 22, on verdict for plaintiff in case of Frances Mosten for herself, Julia Mosten and Vincent Mosten v. The Lake Shore & Michigan Southern Railway Company. Before MITCH-ELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before WALLING, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned*, among others, was in refusing binding instructions for defendant.

Verdict and judgment for plaintiff for $4,383.33. Defendant appealed.

*T. A. Lamb,* for appellant.

*John B. Brooks,* with him *Francis T. Nagorski* and *Paul. A. Benson,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 27, 1907 :

This action was brought by the widow of Joseph Mosten to recover damages for the death of her husband, who was killed by defendant company's train at a grade crossing on German street, in the city of Erie, at about 6 :45 o'clock on the morning of January 10, 1906. German street runs north and south, and ten railroad tracks, covering a space of about 125 feet in width, cross the street at this point at right angles. There are safety gates on the north and south sides of the crossing, the two gates being 145 feet apart. They are not operated. before seven o'clock in the morning. Seven of the tracks belong to the defendant company, and the other three, lying immediately south, are operated by the Pennsylvania Railroad Company. The defendant has four main tracks and three side tracks. Its main tracks are numbered 1, 2, 3 and 4, Track No. 1 is the southernmost track, and is a short distance north of the Pennsylvania tracks. It is a west bound freight, No. 2 a west bound passenger, No. 3 an east bound passenger, and No. 4 an east bound freight track. Mosten was killed by a west bound passenger train, No. 19, on track No. 2. The plaintiff's statement alleges that her husband's death was caused by the excessive and unlawful speed of the train, and by the failure to give warning of its approach to the crossing. The learned trial judge submitted to the jury the question of the defendant's negligence, and also the contributory negligence of the plaintiff. The verdict was for the plaintiff, and, under the charge, that establishes the negligence of the defendant company and relieves the plaintiff from the charge of contributory negligence. The defendant has appealed, and the two assignments raise the single question whether the court, under the evidence, should have declared the plaintiff guilty of negligence as a matter of law.

The morning Mosten was struck by the train was dark and very foggy. An east bound passenger train, No. 18, on track. No. 3, at a speed of from twenty to thirty miles an hour, and.

a west bound freight train on track No. 1, at a speed of about ten miles an hour, were passing the crossing just as Mosten was struck by the west bound passenger train No. 19, on track No. 2. The testimony warranted the finding that train No. 19 was running at the rate of from fifty to sixty miles an hour. One witness, speaking of the speed of the train at the crossing, says " it was like a flash of lightning, and it was gone; I have been there for more than twenty years at that crossing, and I never saw a train go like that."

Mosten lived north of the tracks, and at the time he was killed was going south on German street to the German Stove Works, south of the tracks, where he was employed. Daniel Bowes, one of defendant's witnesses, says he saw Mosten and Mr. Imerman standing near, and just west of him, on track No. 2, immediately before he was struck by the west bound passenger train, No. 19. Bowes and his son, like Mosten, were walking south on German street to their place of employment. The freight train passing west on track No. 1 delayed them, and, while they were waiting until it had cleared the crossing, Mosten was struck by the train on track No. 2. Bowes and his son saw the east bound passenger train on track No. 3 nearing the crossing and stepped out of its way and on track No. 2, when the son saw the west bound passenger train approaching two blocks away, and pulled his father off track No. 2 just in time to save him from being struck by the train that killed Mosten. Bowes says he then called to Mosten and Imerman, but " they seemed to be dumbfounded, the same as I was myself." It was not more than three to five seconds after Bowes saw the west bound passenger train approaching until it struck and killed Mosten.

We think the evidence was amply sufficient to warrant the court in submitting the deceased's negligence to the jury. In the absence of evidence to the contrary the law presumes that Mosten did his duty and stopped, looked and listened before he went on the tracks, and that thereafter he continued to perform his duty. With this presumption in his favor, there is nothing in the case to show that Mosten acted other than a reasonable, prudent man would have acted under like circumstances. If, before he entered on the tracks, he had seen the freight train on track No. 1 blocking his passage, it was

his duty to remain off the tracks until the train had cleared the crossing. And so the court distinctly told the jury, and hence the verdict establishes that Mosten did not see the freight train passing on track · No. 1 before he started to cross the tracks. In view of the conditions prevailing at the time, the jury's conclusion is a reasonable one. The morning was foggy, smoky and dark. A witness testified that it was so foggy he could not see any lights about the crossing. There is some testimony in the case which tends to show that if Mosten had stopped before he entered upon the tracks and looked south he might have discovered the freight train passing on track No. 1, which was eighty-five feet from where he would have been. But this testimony, taken in connection with other testimony of the same witnesses, makes it extremely doubtful whether he could have seen the freight train blocking German street at that time, and, in view of the other testimony in the case, the jury was justified in finding that he could not see the freight train from the north side of the tracks.

Assuming that Mosten entered upon the tracks without knowing or being able to see that a passing freight train was blocking the street, we find no evidence that would justify the court in declaring that his subsequent conduct was negligent. When he was stopped by the freight train he was suddenly put in a place of peril. Had he attempted to retrace his steps he certainly would have been struck by the east bound passenger train, which at that moment was entering the crossing on track No. 3 over which he would have been compelled to pass. There were also four other tracks which he must have cleared before he reached a place of safety. Whether, therefore, it was more prudent for Mosten to await the passing of the freight train or attempt to retreat beyond the north track, was unquestionably for the jury and not for the court. The train which struck him was an hour late, and there is nothing to show that Mosten knew the fact, or believed that it had not passed the crossing on schedule time. Familiar with the crossing and probably knowing the train schedule, he did not anticipate a train at that time on track No. 2, and doubtless thought that it was safer for him to remain between tracks Nos. 1 and 2 than to attempt to cross five other tracks, one of which was track No. 3 on which a passenger train was then

due and approaching.   He had no assurance that a train would not pass the crossing on track No. 4, which lay in the path of his retreat, and endanger his safety.

It is contended by the defendant that if Mosten had been exercising the care required of him he would have seen the west bound passenger train on track No. 2 in time to prevent the accident.   It is true that witness Hart says that as he was approaching the crossing, he stopped at the north gate and saw the west bound passenger train.   But this was when it was passing the crossing.   He testifies he saw it, "it went by so fast; like a flash; the west bound train I didn't see at all until it came up."   At that time Mosten had crossed part of the tracks and was standing near track No. 1 waiting for the freight train on that track to pass west.   As the witnesses say, the passenger train passed the crossing at an extraordinarily rapid speed, in the language of Hart: "it was like a flash of lightning, and it was gone."   Kempf says that as it approached the crossing, "it shot by at the rate of about sixty miles an hour."   John Bowes, who with his father was standing near Mosten when the latter was struck, testifies that from the time he saw the headlight of the approaching train until it went over the crossing, "it was so quick you couldn't hardly see it." Daniel Bowes, who also was near Mosten at the time of the accident and who had stepped from in front of the east bound passenger train on track No. 3, was snatched from track No. 2 by his son just in time to escape being struck by the west bound train, says that he and his son first saw the headlight of the latter train two blocks distant and that in three to five seconds it had passed the crossing.   He also says that owing to the darkness he couldn't tell which way Mosten and Imerman were looking while they were standing there.   From the testimony, therefore, it is manifest that whether Mosten could have seen the train which struck him in time to prevent the accident was for the jury and could not have been determined by the court as a matter of law.   The train approached the crossing without giving any warning whatever and at very great speed.   While waiting for the freight train to pass, Mosten was required not only to look for a train from the east on track No. 2, but also for a train from the west on track No. 3.   In fact, as we have seen, a train was approach-

ing at rapid speed from each direction and passed the crossing at the same time.   Bowes stepped from track No. 3 to track No. 2 to escape the east bound passenger train, and says he would then have been struck as Mosten was by the west bound passenger train on No. 2 track, if his son had not pulled him from the track.   It is, therefore, apparent that Mosten was in a perilous position, and his conduct on the occasion must be considered as the conduct of one suddenly placed in such a position without fault of his own.   In Hoffmeister v. Pennsylvania Railroad Company, 160 Pa. 568, Mr. Justice DEAN, speaking for the court, says (p. 571): " Assuming the deceased exercised care according to the circumstances, before going upon the tracks, stopped, looked and listened for a warning which it was defendant's duty to give, but which it neglected, then, was she negligent when she discovered danger was imminent after she got upon the crossing?   True, she was still bound to exercise care, but care according to the circumstances, and these had changed from the time she stopped and listened before going upon the tracks; then she was in a place of safety and if defendant had given proper warning, she was bound to hear and heed it; but, being upon a crossing, over five tracks, without negligence, then it was for the jury to say whether she was negligent in not turning back, or in not hastening her steps, or in not stopping between the tracks with a locomotive four to six seconds off."

The assignments of error are overruled, and the judgment is affirmed.