# Lindsay v. Mayor and City Council of Anniston.

*Action by City to recover Penalty for Violation of Ordinance.*

1. *Right of city to adopt ordinance regulating the business of transfer companies.*—Where the charter of a city confers upon the mayor and city council the power "to license, tax and regulate hacks, carriages, drays, and all other vehicles," an ordinance enacted by the mayor and council of said city, providing that no "agent of any transfer company * * * shall go within the depot [of said city] for the purpose of soliciting patronage," is a valid exercise of the power conferred by the charter to "regulate hacks;" and, being in its nature and essence a police regulation, its policy or reasonableness can not be inquired into.

2. *Same; such ordinance not unconstitutional as violative of contractual rights.*—Where, under a power conferred by the charter of a city to "regulate hacks," an ordinance is passed providing that no "agent of any transfer company * * * shall go within the depot [of said city] for the purpose of soliciting patronage," such ordinance is not unconstitutional and void because its enforcement would divest or violate any right which a transfer company may have acquired by a contract entered into between it and the railroad companies owning the depot, prior to the passage of the ordinance, whereby the transfer company was granted the exclusive privilege of entering the depot and trains coming thereto, to solicit patronage; since such contract must be deemed to have been entered into subject to the power conferred upon the municipal authorities by the charter of the city to "regulate hacks."

APPEAL from the City Court of Anniston.

Tried before the Hon. B. F. CASSADY.

The appellant was arrested and tried before the recorder of the city of Anniston, for the violation of an ordinance of the city. On his appeal to the city court of Anniston, there was a complaint filed in behalf of the mayor and city council of Anniston, claiming of the defendant a penalty for the violation of an ordinance passed by the mayor and city council of Anniston, "To prevent the annoyance to persons arriving or departing on pas-

17

senger trains at the union depot in the city of Anniston,''
in that the said Lindsay, "being a hackman, or the agent
of a transfer company, at the arrival of a passenger train
at the union depot in the city of Anniston, did go within
the said depot for the purpose of soliciting patronage for
his hack or transfer company;'' and that said Lindsay
failed to stand without the entrance, leaving the passage
way clear at said entrance.

The cause was submitted to the court upon an agreed
statement of facts, of which the following is a copy : ''It
is agreed between the parties that the facts of this case
are as follows :    That on the 18th day of March, 1891,
Joe Lindsay, employé and transfer man, and agent of
the Anniston Transfer Company, in the discharge of his
duties, at the time of the arrival of a passenger train,
was at and within the union depot at Anniston, Alabama,
soliciting in an orderly and respectful manner, without
hindrance to the travelling public, passengers and bag-
gage for said company, under authority from said com-
pany as its agent; said company claiming the right for
its agents to so solicit passengers and baggage under
and by virtue of a contract and bond submitted as part
of the evidence in this case, which bond and contract is
objected to as evidence on the ground that it is irrelevant
and no defense to a violation of the ordinance.    That
the said union depot is, and at the time was, the property
of the Alabama Mineral Railroad Company, under the
sole control and management of said railroad company
and the East Tennessee, Virginia & Georgia Railroad
Company as a passenger depot.''

The provisions of the contract above referred to, rela-
tive to this particular case, are sufficiently stated in the
opinion.

The plaintiff also introduced in evidence a copy of the
ordinance referred to, entitled "An ordinance to prevent
the annoyance of persons arriving or departing on pas-
senger trains at the union depot in the city of Anniston.''
The first section of this ordinance is as follows :    ''Be it
ordained by the mayor and city council of Anniston that
at the arrival and departure of passenger trains from the
union depot, no hackman, agent of any transfer company,
livery stable, hotel porter, or any other person shall go
within the depot for the purpose of soliciting patronage
for his hack, transfer company, livery stable, hotel, or

[Lindsay v. Mayor and City Council of Anniston.]

baggage or transfer wagon ; but all such persons shall stand without the entrance leaving a clear passage way at such entrance.''

The cause was submitted to the conrt without the intervention of a jury. Judgment was rendered in favor of the plaintiff, fixing the recovery at the same amount as the fine which was imposed by the recorder. The defendant prosecutes this appeal, and assigns as error the rendition of said judgment.

KNOX, BOWIE & PELHAM, for appellant.—The city of Anniston by its charter had authority to prescribe regulations as to hacks and other vehicles and the drivers thereof, with reference to their location at the depot, so as to prevent annoyance to the travelling public ; but the ordinance under which the appellant in this case was convicted, attempts to do something very different. Its scope and effect is an appropriation of private property for public use. The depot in Anniston was the property of the railroad companies. The right of the railroad companies to contract with and sell to the transfer companies the exclusive privilege of entering the premises of the depot for the purpose of soliciting patronage and checking baggage was a valuable right, and can not be destroyed or taken away under the guise of police power. The Anniston Transfer Company, whose agent the appellant was, had a written contract with the railroad companies, granting to it such a privilege. The ordinance, the validity of which is questioned in this case, by its terms, undertakes to prohibit agents of transfer companies from entering the depot without regard to whether they did so by permission of the railroad company or not. It is, therefore, in contravention of the right of the transfer company, as derived from the contract, and is, hence, void.—*Napman v. People*, 19 Mich. 352 ; *State v. Mott*, 61 Md. 297, 48 Amer. Rep. 105 ; *Barker v. Railway Co.*, 18 Eng. Com. Bench Rep. 46; *Barney v. Oyster Bay Co.*, 67 N. Y. 301 ; *Jencks v. Coleman*, 2 Sumner 221 ; *Old Colony R. R. Co. v. Tripp*, 147 Mass. 35; 17 Amer & Eng. Encyc. of Law, 251, 253.

BENJAMIN MICOU, *contra*.—1. The ordinance which is attacked as being unconstitutional and void is valid. Its passage was authorized by the charter of the city of

Anniston, and it is a reasonable ordinance. The authority of the charter to regulate all occupations, confers authority to confine the business of the transfer company to certain localities, and to prescribe the manner of carrying on such occupation.—*Ex parte Byrd*, 84 Ala. 20; Horr & Bemis on Mun. Police Ord., 32. When the question is as to the reasonableness of an ordinance which has reference to a subject matter within the corporate jurisdiction it will be presumed to be reasonable, unless the contrary appears on the face of the ordinance itself, or is established by proper evidence.—*Van Hook v. Selma*, 70 Ala. 365; *St. Paul v. Smith*, 38 Amer. Rep. 296; *Veneman v. Jones*, 10 Amer. St. Rep. 101.

2.  The contract between the railroad companies owning and controlling the depot in Anniston and the transfer company, whereby the latter company has authority to have an agent there, can not operate as a defense to this ordinance. The ordinance relates to the convenience and safety of the public, and is a safe regulation, and all rights are held subject to be regulated under the police power of the State.—1 Dillon on Munic. Corp., § 141; *Beer Co. v. Massachusetts*, 97 U. S. Rep. 25; 2 Morawetz on Private Corp., §§ 1066, 1067, 1068. The constitutional provisions prohibiting impairing the obligation of contracts do not restrict the police power of a city. Every right, from absolute ownership in property down to a mere easement, is held subject to police regulations. 1 Waterman on Corporations, §§ 141, 142; *N. O. Gas. Co. v. La. Light Co.*, 115 U. S. 650.

3.  When one devotes his property to a use in which the public has an interest, he in effect grants the public an interest in that use, and must submit to be controlled by the public for the common good.—*Munn v. Illinois*, 94 U. S. Rep. 113; 2 Morawetz on Private Corp., § 1074; 1 Waterman on Corp., 519, § 142.

BRICKELL, C. J.—The amended charter of the city of Anniston confers on the Mayor and Council of the city large powers intended to promote good government within the corporate limits, and the public peace, order and convenience. Among other powers, is the power "to license, tax and regulate hacks, carriages, drays, and all other vehicles, and to fix the rate to be charged for the carriage of persons and property within the corpor-

ate limits of the city, or to the public grounds or property within the city."—Pamph. Acts, 1890–91, p. 104. The ordinance the appellant was convicted of having violated was adopted by the Mayor and Common Council in the exercise of the power to regulate hacks. The power of regulation is the more general of the powers the charter confers, and, as applied to business, occupations or employments, is the power to prescribe rules for the conduct of the business, or the manner in which the occupation or employment is to be pursued. Hackmen, cartmen and wagoners, engaged in the carriage of goods or persons for hire, by the common law are regarded as common carriers, and the power lies in the legislature, in the absence of constitutional restraint or limitation, to regulate, to prescribe the rules according to which their business may be conducted.—*Munn v. Illinois*, 94 U. S. 113. The power may.be, and is often, delegated to municipal corporations, to be exercised for the promotion of the public convenience. When the power has been delegated in terms of the character employed in the amended charter, the validity of ordinances, prescribing the times, places and manner in which the employment is to be pursued, has been uniformly sustained.—*Com. v. Stodder*, 2 Cush. 562 ; s. c. 48 Am. Dec. 679 ; *City of St. Paul v. Smith*, 27 Minn. 364 ; s. c. 38 Am. Rep. 296 ; *Veneman v. Jones*, 118 Ind. 41 ; s. c. 10 Am. St. Rep. 100. Such ordinances are in their nature and essence police laws or regulations, and when adopted in the exercise of an express legislative grant of power, there can be no inquiry into or discussion of their policy or reasonableness. "What the legislature says may be done, can not be set aside by the courts, because they may deem it unreasonable or against sound policy."—1 Dillon Mun. Corp., § 328.

The material contention of the appellant is, that if he be subjected to the operation of the ordinance, his principal, The Anniston Transfer Company, in whose service he was engaged, when doing the act complained of, will be divested of a right and privilege which the railroad companies, owning and constructing the depot, had granted on a valuable consideration, prior to the adoption of the ordinance. The contract into which the railroad companies and the transfer company had entered, purports to be founded on a valuable consideration, and

thereby the railroad companies do, "so far as it is lawful," grant to the transfer company, the exclusive right, by the officers, agents and employés, to enter the premises and trains of the grantors for the purpose of soliciting patronage. It is forcibly argued by the counsel for the appellee, that the real object of the contract, the object the parties contemplated and proposed to accomplish, was the grant to the transfer company of the exclusive right and privilege to enter the premises and trains of the railroad companies for the solicitation and procurement of the patronage of passengers, and that of consequence the contract is illegal, offending public policy. It is a grave and important question, embarrassed by a serious conflict of authority, whether a railroad company may grant to hackmen, or to others pursuing a public employment, the exclusive right to enter its depot, or to enter and occupy the adjacent grounds, for the purpose of soliciting and obtaining patronage. The authorities have been carefully collected, reviewed and discussed by Mr. Freeman, in the elaborate notes to the case of *Kalamazoo Hack & Bus. Co. v. Sootsma*, 22 Am. St. Rep. 693, and *Montana Union R. Co. v. Langlois*, 18 Am. St. Rep. 745. The necessities of this case do not require a discussion or decision of that question. The contract, whatever may be its objects, or whatever may be the rights it confers, or it was intended to confer, must be deemed to have been entered into in view and in subordination to the powers of the municipal authorities to exercise the power to regulate the business and employment of hackmen.—*Corporation of Knoxville v. Bird*, 12 Lea, 121; s. c. 47 Am. Rep. 326. It is observed by Judge Cooley, that the clause of the constitution of the United States forbidding State legislation impairing the obligation of contracts, "does not so far remove from State control the rights and properties which depend for their existence or enforcement upon contracts, as to relieve them from the operation of such general regulations for the good government of the State and the protection of the rights of individuals as may be deemed important. All contracts and all rights, it is declared, are subject to this power; and not only may regulations which affect them be established by the State, but all such regulations must be subject to change from time to time, as the general well-being of the community may

require, or as the circumstances may change, or as experience may demonstrate the necessity."—Cooley Con. Lim. (6th Ed.), 707. The charter of the city is essentially a public statute; of it all the courts of the State take judicial notice; and obedience to it is due from all who are within its protection. It is not mere legal presumption, resting upon considerations of public policy, that the law silently incorporates itself into the contracts of parties. The incorporation, when the parties are dealing in good faith, most often comports with their actual intention, or they would have expressed all that the law implies. The parties could not have contemplated that the municipal authorities would never exercise the power with which they were clothed to regulate the business of hackmen; nor is it to be presumed that they intended any embarrassment or diminution of the power when exercised. The juster presumption is, that it was not intended the rights and privileges the contract may confer should endure if they became in conflict with the regulations ordained by the municipal authorities. However this may be, the ordinance is a valid exercise of the power with which the municipal authorities were clothed; a power intended for the protection of the public, and the promotion of good order, and its exercise deemed necessary for the public benefit. If thereby pre-existing private rights are restrained or limited, the restraint or limitation is *damnum absque injuria.*—1 Dillon Mun. Corp., § 141; *Vanderbilt v. Adams*, 7 Cowen, 349. The individual shares in the public benefit which it is intended to promote, and this is the compensation deemed by the law adequate.

The act, the appellant admitted, was a violation of the ordinance, necessitating the judgment of conviction; and it must be affirmed.