[Whaley v. The State.]

# Whaley *v.* The State.

### *Buying or Receiving Transfer on Street Car for use as Fare.*

(Decided Dec. 16, 1909.  Rehearing denied June 30, 1910.
52 South. 941.)

1. *Constitutional Law; Construction of Statute.*—All doubts should be resolved in favor of the constitutionality of the statute, and it should be upheld when capable of being construed so as to harmonize with the constitution without doing violence to the legislative intent.

2. *Same; Legislative Powers; Delegation.*—Act 1907, p. 89, S. S. is not unconstitutional as delegating to street railway officials not only the right to legislate, but to, in effect, suspend the law by a suspension or abolition of the rules; the right to make reasonable rules existed independently of the act, and the authority therein given was not a delegation of authority to legislate but merely reiterated the right to make such rules.

(Mayfield, Sayre and Evans, JJ., dissent.)

APPEAL from Jefferson Criminal Court.

Heard before Hon. S. L. WEAVER.

R. A. Whaley was convicted of buying or receiving a transfer issued by a street car company for the purpose of using it as fare, and he appeals.  Affirmed.

GASTON & PETTUS, for appellant.  The law is clearly unconstitutional as a delegation of legislative authority to the officers of a street railway corporation.  As to what a fact is see.—*Huber v. Guggenheimer,* 89 Fed. 598; *Woodfill v. Patton,* 40 Am. Rep. 269; 3 Words & Phr. 2638.  The power conferred on the legislature to make laws cannot be delegated by it to any other body or authority.—Cooley's Const. Lim. 163-5; Black Con. Law, 321; *O'Neal v. Am. I. Co.,* 26 L. R. A. 717; *Seneca Bank v. Lamb,* 26 Barb. 95; *Mitchell v. The State,* 134 Ala. 411; *Harlan v. The State,* 136 Ala. 150; Secs.

21 and 44, Const. 1901. The statute is penal and must be strictly construed.—26 A. & E. Enc. of Law, 658. The offense sought to be created should be defined in the act itself.—144 U. S. 677. Where the language is plain no discretion is left the court and the law should be taken to mean exactly what it says.—*State v. Mc-Gough*, 118 Ala. 166; *Little v. Foster*, 130 Ala. 133. The courts do not hesitate to declare statutes unconstitutional when necessary to the decision of a particular case.—*Hill v. Tarver*, 130 Ala. 592.

ALEXANDER M. GARBER, Attorney General, and TILLMAN, BRADLEY & MORROW, for the State. The act is an important one and should be upheld as advancing a sound public policy unless it clearly infringes on the constitutional provision. It is not denied that it is within the police powers of the legislature.—*Ex parte Lorenzo*, 50 L. R. A. 55; *Morrison v. The State*, 116 Tenn. 534. It was within the competency of the legislature to make rules or regulations in respect to the issue and use of transfers, and no attempt is made by the act to give the power to issue them, as that already existed.—*A. G. S. v. Carmichael*, 90 Ala. 19; *Armstrong v. Montg. St. R. Co.*, 123 Ala. 233; *Evans v. M. & C.*, 56 Ala. 246; *L. & N. v. Hines*, 121 Ala. 234. The power and the duty to make reasonable rules and regulations governing the operation of railroads to insure the safety and comfort of its patrons is in such corporation, and is not, therefore, a legislative power.—*Shortsleeves v. Capitol T. Co.*, 8 L. R. A. (N. S.) 287; 58 Mo. App. 79; 70 N. E. 56; *Pullman Co. v. Krauff*, 145 Ala. 395. It follows that the first section does not confer upon the carriers the power to make laws. As to the distinction between what is legislative power and what is merely a discretion vested by the legislature

in others in respect to carrying out or executing the law, see *Loch's Appeals*, 13 Am. Rep. 716; *Blue v. Beech*, 50 L. R. A. 64; 1 Sutherlin on Statutory Const. Sec. 88; *Broadbine v. Revere*, 182 Mass. 598; *Harbor Comm. v. Excelsior Redwood Co.*, 22 Am. St. Rep. 321; *Weyman v. Southard*, 10 Wheat. 1; *Ga. Ry. v. Smith*, 70 Ga. 694. The act was not a surrender of the power of legislation to corporation.—*Martin v. Witherspoon*, 135 Mass. 175; *Hearst v. Warner*, 102 Mich 238; *Ingram v. The State*, 39 Ala. 247; *Dunn v. Comm.* 85 Ala. 144; 1 Ohio St.. 77.

ANDERSON, J.—It first appeared to this court, that the act in question (Sp. Sess. Laws 1907, p. 89) was violative of the Constitution because it delegated to officials of street railroad companies, not only the right to legislate, but to, in effect, suspend the law by a suspension or abolition of the rules. The question is still a close one, but all doubts should be resolved in favor of the constitutionality of a law, and it should be upheld when it is capable of being construed so as to harmonize with the Constitution without doing violence to the legislative intent. The right to make reasonable rules by street car companies, through its officers and servants, exists independent of the act, and the authority thereby given is not the delegation of authority to legislate, but merely reiterates the right of the officers to make reasonable rules in and about the conducting of the business of the public service utility, and, in addition thereto, prohibits under penalty, a violation of said rules. This statute makes it unlawful to fraudulently or wilfully violate said rules. A party cannot be guilty of violating this law unless he violates the rules fraudulently or wilfully and knowingly. The rules must be reasonable, and must be known to him at

[Whaley v. The State.]

the time of the violation of same. The fact that the rules may be changed or suspended is no delegation of authority to make, change, or suspend the law, but merely relates to the subject upon which the law operates. The law is made by the Legislature, and cannot be repealed or suspended except by said body, and the fact that the rules may be changed or suspended in no wise changes or suspends the law. It is on the statute books, and there it remains until repealed or amended by the Legislature, and the abolition or suspension of the rules only removes the subject for the time being, upon which the law operates. Whether the rules are made or not, or are repealed or suspended after being made, we still have the law remaining in force and ready to apply to the subject whenever it comes into existence. There might be but one street car company in the state, and it might suspend operation, and there would therefore be no subject upon which the law would presently operate, but this fact would not repeal or suspend the law itself, for later we might have many street car companies, or the existing one might resume operation, and as soon as any of them formulated reasonable rules there would be a subject upon which this existing law can operate, notwithstanding it was not in being when the law was enacted or may have not existed at all times after the passage of same.

The act in question being valid, and there being no reversible error disclosed by the record, the judgment of the criminal court is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.

SAYRE, J.—(dissenting). I do not doubt that the Legislature may in the proper exercise of the police

power regulate every business in the state. Nor do I doubt that the Legislature may confer upon railroad companies, or individuals operating railroads, the power to provide proper regulations for the protection of their property, the property of those with whom they deal, and for the enforcement of their mutual rights. Indeed, they have that right without express legislative grant, and there are circumstances in which a failure to adopt a proper system of rules and regulations would amount to a dereliction of duty. But it has never been supposed, so far as I am informed, that rules adopted in pursuance of this general power amounted to more than rules of prudence binding only upon those who have notice of them. Here, the proposition is to punish criminally persons who may violate the rules a certain class of private business corporations may see fit to adopt from time to time, and commits the power also to their managing agents. It seems obvious to me that no peculiar merit to save the statute is to be found in the fact that the enterprises concerned are railways, or that the agents upon whom the power is conferred are managing agents. If the act is to be sustained as a valid exercise of legislative power, a similar power may be conferred on any corporation or person doing business in this state, and may as well have been conferred upon a motorman or conductor. But I do not agree that any private corporation or person can have the power to define the elements of a criminal act. The citizen can be required to look only to the common law, to legislative enactments, or to the ordinances and rules of a certain class of public corporations, and perhaps to some public office acting under responsibility as the representatives of the people, to which quasi legislative powers are delegated for limited and most generally local purposes, to know what acts of his may

be punished under the criminal laws of the state.    Mr.
Cooley thus speaks of the doctrine: "It has already
been seen that the Legislature cannot delegate its pow-
er to make laws; but, fundamental as this maxim is, it
is so qualified by the customs of our race, and by other
maxims which regard local government, that the right
of the Legislature, in the entire absence of authoriza-
tion or prohibition, to create towns and other inferior
municipal organizations, and to confer upon them the
powers of local government, and especially of local tax-
ation and public regulations usual with such corpora-
tons, would adways pass unchallenged."—Cons. Lim.
264.    In *Dunn v. Court of County Revenues,* 85 Ala.
144, 4 South. 661, speaking of a stock law, it was said:
"These laws are complete within themselves, providing,
as they do, in detail, for regulating the    running    of
stock at large, and the enforcement of the rights of all
parties to be affected by them in the particular locality
to which they are made applicable.    None    of    their
terms or provisions are made to rest in the legislative
discretion of the county authorities.    As to this fea-
ture, the General Assembly had not abdicated any of
that constitutional and prerogative power, which is pe-
culiarly its own.    The only power conferred or del-
egated is to determine the contingency on which the
laws, or certain designated portions of them, may go
into effect.    It is no objection to a statute that it is
conditional, or that its taking effect is to depend upon
some specified subsequent event.    Affirmative legislation,
in some cases, may be adopted of which the parties in-
terested are at liberty to avail themselves or not at
their option"—citing Cooley Cons. Lim. 117.    In *Brod-
bine v. Inhabitants of Revere,* 182 Mass. 598, 66 N.
E. 607, it was held that a statute giving the board of
metropolitan park commissioners authority to "make

rules and regulations for the government and use of the roadways or boulevards under its care, breaches whereof shall be breaches of the peace, punishable as such in any court having jurisdiction of the same" was constitutional. But observe the reasoning upon which that decision was placed. After noting that there is a well-known exception to the rule which forbids the delegation of the power to make laws, resting upon conditions which existed from ancient times in most of the older states of the Union, which the Constitutions of those states generally recognize, namely, the existence of towns or other local governmental organizations which had always been accustomed to exercise self-government in regard to local police regulations and other matters affecting peculiarly the interest of their own inhabitants, and that on this account the determination of matters of this character had been held to be a proper exercise of local self-government which the Legislature might commit to a city or town, the court expressed itself as follows: "How far this principle may be extended in the proper application of it is a subject on which there is much difference of opinion among judges. Whether it will justify the creation of a tribunal other than the voters or their usual representatives, where they have a representative government for the management of municipal affairs, seems not to have been much considered by the courts. It is very clear where the people of a city or town have become so numerous that the management of their municipal affairs can be conducted conveniently only by a representative body like a city council, that municipal legislation, such as making ordinances and regulations as to local matters affecting the health, safety, and convenience of the people, may be intrusted to the people's chosen representatives in a city government. * * * In this commonwealth

[Whaley v. The State.]

legislation has gone further than this. Apparently on grounds of expediency amounting almost to necessity, the making of rules and regulations for the preservation of the public health has been intrusted to boards of health * * * and a violation of the rules established by city or town boards has long been and is now punishable in the courts." And it was said that those statutes were to be justified upon one or both of two grounds: The board of health was treated as properly representing the people in making regulations; the work of the board of health was treated as only a determination of details in the nature of administration. In my judgment the concurrence of both grounds is necessary to support legislation of that character. And penal rules made by boards of harbor and land commissioners were said to be sustained upon these grounds. On these principles, also, was based the decision in *Ingram v. State*, 39 Ala. 247, 84 Am. Dec. 782.

The Massachusetts case from which I have just quoted states, as well as it can be stated, the theory of penal rules and the justification for them. Chief Justice Marshall had before that used this language, which, in my judgment points out, by inference at least, an exceedingly important limitation upon the delegated power of establishing such rules: "It will not be contended that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But Congress may certainly delegate to others powers which the Legislature may rightfully exercise itself. * * * The difference between the departments undoubtedly is that the Legislature makes, the executive executes, and the judiciary construes, the law. But the makers of the law may commit something to the discretion of the other departments, and the precise boundary of this power is a subject of delicate

and difficult inquiry into which the courts will not enter unnecessarily."—*Wayman v. Southard,* 10 Wheat. 1, 6 L. Ed. 253. And he instances the power conferred upon courts to make rules which was the subject of inquiry in that case. I am not disposed to aid in the extension of this doctrine of delegated powers to private corporations and persons which are not any part of the scheme of government and which are without responsibility for the manner in which the power may be exercised. Certainly this court has never gone to any such extent. Certain, also, it is that in each of the cases cited to support this statute the Legislature had conferred power to make necessary rules upon co-ordinate branches of the government, and not upon private persons. In the case at hand we are requested to put the citizen who may desire to conduct himself in conformity to all the laws of his country in a situation where he cannot go to the Legislature, nor to his local government, nor even to any official bureau or public officer, but must have recourse to such information as may be vouchsafed by a private business corporation or a private person, to know what he may, and what he may not, lawfully do. The private files of a business concern are to be the sole memorials of penal rules under which every citizen of the state may suffer. Without such rules enacted by street railway companies or their agents the statute means absolutely nothing. A more complete surrender of the legislative power, a more decided step towards a bureaucratic scheme of government, cannot be imagined. Such rules, in my judgment, are not called for by any necessity of government, lack of legislative authority, lack that promulgation which is an essential of constitutional legislation, and are absolutely void. For these reasons, I dissent.

MAYFIELD and EVANS, JJ., concur in these views.

[Whaley v. The State.]

MAYFIELD, J.— (dissenting). I concur in all that is said by Justice SAYRE in his dissenting opinion, and in addition thereto I feel constrained to add the following, as expressive of my views of the unconstitutionality and invalidity of the statute in question, and which is upheld by the court in the majority opinion:

If the statute in question only declared that any person who, with intent to defraud or injure another, issues transfers or otherwise disposes thereof, in wilful violation of any reasonable rules of any common carrier, shall be guilty of a misdemeanor, and, on conviction, shall be punished by a fine of $100, and may, also be sentenced to imprisonment in the county jail, etc., I concede that it would be within the power of the Legislature, and might be valid if constitutionally enacted. The statute in question, however, does not do this, but in my opinion it has attempted to authorize any person or corporation operating a street railroad within this state, acting through a president or other authorized managing officer, to make any and all rules and regulations for the issue and use of transfer tickets, commonly called "transfers," which may be necessary for the protection of the person or corporation making the rules. The statute does not at all limit it to rules which are reasonable, but permits it to make any rules for the issue or use of transfers which the carrier deems necessary for its protection. If it does not mean this, what is the use or sense of the first section of the statute? The power and right to make all such reasonable rules as to transfers, already existed. The act is certainly not merely declaratory of the common law; it was clearly not so intended.

The second section of the act makes it unlawful for any person not authorized by the rules (not the statute) to issue or dispose of such transfers.

11—168

The third section makes it unlawful for any person to use a transfer not issued in accordance with such rules, or to use one properly issued for any other purpose than that for which the rule authorizes it to be used.

Section four attempts to make it a crime for any conductor or other agent of the corporation to issue or dispose of such transfers in violation of any existing rules, or of any that might thereafter be adopted by the common carrier, and to fix a penalty for the violation.

Section five makes it a crime for any person, other than the conductor or agent of the common carrier, to issue or dispose of any transfer in violation of any rule or regulation that might be adopted by the person or corporation operating a street railroad; and also makes it a crime for any person to buy or receive, for the purpose of using, or to use or attempt to use, any such transfer, as fare, on any car operated upon such street railroad, wilfully in violation of such rules, and prescribes a penalty by fine and imprisonment or hard labor.

The act, in addition to the foregoing, does make it a crime to issue, dispose of, or use, such transfers in violation of the rules and with the intent to defraud. This provision I think is proper, if the act was otherwise valid. In short, the act is in my opinion nothing more nor less than an attempt, on the part of the Legislature, to authorize any and all persons in this state who operate a street railroad, or the president or managing officer of a corporation which operates such a street railroad, to make and unmake the criminal laws of the state pertaining to the issue, use, or disposition of transfers used in connection with street railroads.

The act does not attempt to authorize, regulate, or prohibit, anything except the issuance, use, or disposi-

tion of these transfers. It neither makes nor attempts to make any law relating to the subject-matter. It merely attempts to authorize certain private individuals to make or unmake any law they may desire, relative to the matter, without let or hindrance, and attempts to make all persons guilty of a crime who violate such individual-made laws, and prescribes a rather severe punishment of fine, imprisonment, or hard labor. If these favored persons authorized to make the laws on this subject make no rules or regulations thereon, then there can be no crime under this act. If they make rules on this subject there will be just that many laws, and no more, under this act; if they make rules on the subject to-day, there are that many laws on the subject to-day; if they repeal or abolish all these rules to-morrow there will be no laws on the subject, until they make some more rules and regulations. If two or more of these persons make different and inconsistent rules, no matter how inconsistent, they are all law. The criminal law on the subject of transfers may and will be one thing to-day and another to-morrow; one thing in one town or city, and another in other towns or cities. A given act will be a crime in Montgomery, and not in Birmingham; it will be a crime on one street car in Montgomery, and not on another; it will be a crime on one car, and not on another of the same train.

The act does not attempt to provide that all street car companies shall make the same rules, but authorizes entirely different ones, and makes all the criminal law on the subject—whether they be reasonable or unreasonable, consistent or inconsistent. That is, if this statute is valid, the criminal law on the subject of transfers for street railroads depends solely upon the ipse dixit of those individuals authorized to make the rules and regulations. In my judgment there is no es-

cape from this conclusion. If I am right in my construction of the statute it cannot be a valid or constitutional enactment. Such acts are clearly not within legislative competency, because attempting an unwarranted delegation of the law-making power, because authorizing private individuals to make and suspend the laws, in violation of section 21 of our Bill of Rights.

Mr. Cooley, in his work on Constitutional Limitations (page 163), says: "One of the settled maxims in constitutional law is that the power conferred upon the Legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the state has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust;" and he there, as well as in other places in his book, cites approvingly what Mr. Locke, in his work on Civil Government, says as follows: "There are the bounds which the trust that is put in them by the society, and the law of God and nature, have set to the legislative power of every commonwealth, in all forms of government: First. They are to govern by promulgated established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plow. Secondly. These laws also ought to be designed for no other end ultimately but the good of the people. Thirdly.

They must not raise taxes on the property of the people without the consent of the people, given by themselves or their deputies. And this properly concerns only such governments where the legislative is always in being, or at least where the people have not reserved any part of the legislative to deputies, to be from time to time chosen by themselves. Fourthly. The Legislature neither must nor can transfer the power of making laws to anybody else, or place it anywhere but where the people have."—Locke on Civil Government, § 142.

While there are certain delegations of the law-making power which have been upheld, such as are pointed out and referred to by Justice SAYRE in his dissenting opinion, and there may be others, which are exceptions to or qualifications of the general rule denying the delegability of the law-making power, I do not believe that any like the one in question has ever before been upheld. The Massachusetts Court held, in the recent case of *Welch v. Swasey,* 193 Mass. 364, 79 N. E. 745, 118 Am. St. Rep. 523, 23 L. R. A. (N. S.) 1160, that matters of local self-government might always be intrusted to the inhabitants of the town, and that the Legislature might delegate to a commission the power to fix the heights to which buildings might be erected; but that court has never held that the Legislature could delegate to private individuals the power to make criminal laws, though the laws did pertain to public service corporations.

It is likewise true that the Legislature, in the exercise of the police power, may regulate the issuance and transfer of railroad or street car tickets or prevent the transfer thereof, or provide that no one but the carrier or his agent shall sell or deal in such tickets; and may make it a crime for any other person to sell such tickets. But a statute which made it a crime for any

person other than the agent of a common carrier, to sell tickets which contained on their face a statement that such sale is penal, but left it optional with the carrier whether or not the ticket should contain such statement, was held void, as an unwarranted delegation of the legislative authority to make or suspend a law; and also because it failed to define with certainty an offense and not of itself creating an offense, and as giving to the carrier the option to create an offense. See *Jannin v. State*, 42 Tex. Cr. R. 631, 51 S. W. 1126, 62 S. W. 419, 96 Am. St. Rep. 821.

A statute which authorized an insurance commissioner to prepare a standard policy of insurance, and prohibited the use of any other form, was held void as an unauthorized delegation of legislative power, and because the law was not complete in all its terms when it left that branch of the law-making power of the government.—*O'Neil v. Ins. Co.*, 166 Pa. 72, 30 Atl. 943, 26 L. R. A. 715, 45 Am. St. Rep. 650. In speaking of the power thus delegated to the insurance commissioner, the court said: "Take out the form prepared by the insurance commissioner and to be found in some pigeonhole in his office, and the act is without meaning or effect. It is completely eviscerated. * * * By its provisions the Legislature says in effect to its appointee: 'Prepare just such policy or contract as you please; we do not care to know what it is. The Governor shall have no opportunity to veto it. File it in your own office, and we will compel its adoption, whether it is right or wrong, by the punishment of every company officer, or agent who hesitates to use it.' * * * We do not see how a case could be stated that would show a more complete and unconstitutional surrender of the legislative function to an appointee."

Is not the case at bar a more radical, if not a more complete, surrender of the legislative function? In this case the Legislature does not even select or appoint the lawmaker, but authorizes any and all who operate a street railroad to become such. It does not even require that the law be in writing, and allows as many laws as there may be persons operating street railroads; it does not limit each to one law—each such person may make and unmake as many as he desires.

If this law is valid, how can this court, or any citizen desiring to observe or enforce the criminal law relating to these transfers, know or find it? Only by interrogating every person who by this act is authorized to make the law. And, if you could reach all, while you were interrogating one, the other might be making other laws or repealing those then existing. It is true that under our system of government a state Legislature, as a law-making power, is well nigh omnipotent. There are no limits to its power for this purpose, except those written in or implied from the state and federal Constitutions. The entire law-making function of the state sovereign is vested in the Legislature, subject only to the above exceptions or restrictions. Without these, the power would be as that of the whole people from whom it is derived. But this power, almost unlimited, as it is, must be exercised in the manner and mode pointed out by the Constitution. This much is necessary to the preservation of the Constitution, or of the government itself; for the Constitution is the sole instrument by which this law-making power is created, and it defines and limits the power of the Legislature, and prescribes the principles by which, alone, the affairs of the government are to be administered.

Justice Patterson, speaking of the important and almost sacred character of the Constitution, in the case of

*Vanhorne's Lessee v. Dorrance*, 2 Dall. (Pa.) 308, Fed. Cas. No. 16,857, 1 L. Ed. 391, says: "It is the form of government delineated by the mighty hand of the people, in which certain first principles of fundamental law are established. The Constitution is certain and fixed; it contains the permanent will of the people, and is the supreme law of the land; it is paramount to the power of the Legislature, and can be revoked or altered only by the authority that made it. The life-giving principle and the death-doing stroke must proceed from the same hands."

Justice Bell in the case of *Parker v. Commonwealth*, 6 Pa. 507, 47 Am. Dec. 480, after quoting the above from Justice Patterson, adds: "Until altered or destroyed by this authority, it is obligatory upon the people themselves; and Legislatures, which are merely its creatures, must conform to it, or their acts will be void. Everything done in contravention of its principles is an act of usurpation, which, uncorrected, tends directly to overthrow it." And in the same opinion the learned justice adds: "As has been well remarked, the constituent is entitled not only to the industry and fidelity of his representative, but to his judgment, also, in all that relates to the business of public legislation. Among the principal axioms of jurisprudence, political and municipal, is to be found the principle that an agent unless expressly empowered, cannot transfer his delegated authority to another, more especially when it rests in a confidence, partaking the nature of a trust, and requiring for its due discharge understanding, knowledge, and rectitude. The maxim is delegata potestas non potest delegari. And what shall be said to be a higher trust, based upon a broader confidence, than the possession of the legislative function? What task can be imposed on a man, as a member of society, requiring a

deeper knowledge and a purer honesty? It is a duty which cannot, therefore, be transferred by the representative; no, not even to the people themselves; for they have forbidden it by the solemn expression of their will that the legislative power shall be vested in the General Assembly; much less can it be relinquished to a portion of the people, who cannot even claim to be the exclusive depositories of that part of the sovereignty retained by the whole community. An attempt to do so would be not only to disregard the constitutional inhibition, but tend directly to impress upon the body of the state those social diseases that have always resulted in the death of republics, and to avoid which the scheme of a representative democracy was devised and is to be fostered."

Mr. Justice Chase, in the case of *Calder v. Bull,* 3 Dall. 386, 1 L. Ed. 648, says: "I cannot subscribe to the omnipotence of a state Legislature, or that it is absolute and without control; although its authority should not be expressly restrained by the Constitution, or fundamental law, of the state."

Chief Justice Marshall said, in the famous case of *Marbury v. Madison,* 1 Cranch, 137, 2 L. Ed. 60, that: "Courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, they are under a solemn duty—to look at the substance of things whenever they enter upon the inquiry whether the Legislature had transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or public safety has no real or substantial relations to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the court to so adjudicate and thereby give effect to the Constitution."

The act in question is no doubt attempted to be adjudicated on the ground that it protects and promotes the public safety; but in effect it attempts to make it a public crime to violate any rule or regulation of a street car company, as to transfers, whether the rule is reasonable or unreasonable, whether it would tend to promote or to destroy the public safety. It merely invokes the criminal machinery of the state to enforce the rules and regulations of street railroads.

I know that the majority of this court do not think the law means what I construe it to mean, if they did they would strike it down. They of course believe and hold that it is a proper police regulation of the issue, use, and disposition of street railroad transfers, and, if they are correct, of course the enactment would be valid. But in my opinion the act is, in effect, an attempt to authorize those who operate street cars to make criminal laws as regards street railroad transfers, and to make it a crime to violate the laws thus made by such street car operators. This the Legislature has no power to do.

My conclusion is that the act is in violation of the Constitution (1) because it is an unwarranted delegation of legislative power to individuals; (2) because it is an attempt to authorize individuals to suspend the laws at pleasure.