(82 South. 151)

**BIRMINGHAM RY., LIGHT & POWER CO. v. KYSER.    (6 Div. 825.)**

(Supreme Court of Alabama.    Jan. 16, 1919. On Rehearing, April 10, 1919.    On Application of Appellant for Rehearing, May 22, 1919.)

1. **MASTER AND SERVANT** ☞258(11)—INJURIES TO SERVANT—PLEADING—SAFE PLACE TO WORK.

In an action for death of a servant forced to jump from a burning building, a count of the complaint relying on defendant's negligent failure to furnish a reasonably safe place to work *held* not subject to demurrer.

2. **MASTER AND SERVANT** ☞258(10)—INJURIES TO SERVANT—PLEADING.

In an action for death of a servant forced to jump from a burning building, a count of the complaint, relying on defendant's wrongful failure to provide fire escapes *held* not subject to demurrer.

3. **EVIDENCE** ☞32—JUDICIAL NOTICE—CITY ORDINANCES.

Under Acts 1915, p. 297, § 7, the courts take judicial notice of all ordinances of the city of Birmingham.

4. **CONSTITUTIONAL LAW** ☞42—INVALIDITY OF STATUTE—RIGHT TO COMPLAIN.

Only one affected by an invalid statute or ordinance can complain thereof.

5. **MASTER AND SERVANT** ☞289(38)—INJURIES TO SERVANT — CONTRIBUTORY NEGLIGENCE—QUESTION.

In an action for death of a servant forced to jump from a burning building, the question of decedent's contributory negligence *held* for the jury.

On Rehearing.

6. **MUNICIPAL CORPORATIONS** ☞591—FIRE ESCAPE ORDINANCE—FIRE BOARD—"ARBITRARY DISCRETION"—VALIDITY.

Ordinance of city of Birmingham providing for certain kinds of fire escapes on all buildings over two stories high, except fireproof buildings, or those having adequate escapes, *held* not invalid as giving the fire board of the city an arbitrary discretion in requiring or exempting buildings from fire escapes; an "arbitrary discretion" being one which discriminates between those of the same class or similarly situated.

7. **MUNICIPAL CORPORATIONS** ☞111(1)—ORDINANCE—CONSTRUCTION IN FAVOR OF VALIDITY.

Where a city ordinance, like a statute, is susceptible of two interpretations, one of which will nullify, the other sustain, it, the validating interpretation should be given, though the other is the more natural.

8. **MUNICIPAL CORPORATIONS** ☞625 — FIRE ORDINANCE—REASONABLENESS.

In view of Code 1907, § 1264, fire ordinance of the city of Birmingham *held* not unreasonable in its prohibition of locks and bolts on all doors to rooms which do not open into or front upon the passage, hallway, or other exit.

9. **APPEAL AND ERROR** ☞1039(13)—HARMLESS ERROR—VARIANCE IN PROOF.

In action for death of plaintiff's intestate forced by fire to jump from his employer's building, in view of the possibility of judicial notice, under Acts 1915, p. 297, § 7, introduction in evidence of part only of the city ordinance requiring fire escapes relied on, whereas the whole ordinance was set out in the complaint, *held* harmless to defendant.

10. **MASTER AND SERVANT** ☞264(1) — INJURIES TO SERVANT — VIOLATION OF ORDINANCE—PROOF OF ALLEGATIONS.

In action for death of a servant forced to jump from a burning building without fire escapes required by ordinance, where plaintiff did not rely on conjunctive acts of noncompliance with the ordinance, defendant was not entitled

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to the general charge because plaintiff did not prove each averment as to dereliction with respect to the ordinance.

11. PLEADING ⬡248(12) — AMENDMENT — ADDITIONAL GROUND OF ACTION—DEATH OF SERVANT.

Defendant employer, sued for death of its servant forced by fire to jump from its building unprovided with fire escapes as required by city ordinance, was not entitled to the general charge as to the count of the complaint relying on its violation of the ordinance because such count was added more than a year after suit was brought, being within the lis pendens, and relating back under Code 1907, § 5367.

On Application of Appellant for Rehearing.

12. TRIAL ⬡240, 244(2) — ARGUMENTATIVE INSTRUCTION—SINGLING OUT EVIDENCE.

A charge argumentative and singling out a part of the evidence is properly refused.

Appeal from Circuit Court, Jefferson County; John H. Miller, Judge.

Action by George P. Kyser, as administrator, against the Birmingham Railway, Light & Power Company for damages for the death of his intestate. Judgment for plaintiff, and defendant appeals. Affirmed.

The first count sets out that the defendant occupied in the conduct of its business a building in the city of Birmingham located at the northeast corner of First avenue and Twenty-First street which was three stories or more in height, not including the basement; that on the 8th day of May, 1914, while plaintiff's intestate was in the service or employment of the defendant and was engaged in or about the work for which he was employed by the defendant to do on the fourth floor or story of said building, the said building caught fire, and as a proximate consequence thereof plaintiff's intestate was so burned, asphyxiated or otherwise injured that he was caused to fall, jump, or be thrown from said building to the street below and to die. The count concludes with an allegation that the defendant negligently failed to furnish intestate with a reasonably safe place in which to do his work.

The fifth count makes the same statement as the first count, and for negligence avers as follows:

Plaintiff further avers that the said building was an office building, store, or manufacturing plant, and was more than two stories high, and defendant had been in possession of and using said building for more than six months immediately preceding and up to the time of said death, and wrongfully failed to have securely fixed and conveniently arranged so as to be accessible to said intestate, who, as such employé of the defendant, was working in or occupying an upper story of said building at the time of said fire in said building, good and sufficient fire escapes or ladders for the said story of said building on which said intestate was on the occasion aforesaid, and as a proximate consequence of said wrong said intestate's death was caused.

Count 6 is based upon the violation of an ordinance of the city of Birmingham which is as follows:

*Fire Escapes.*—All buildings more than two stories high in any part or in whole now or hereafter used in any part or in whole as a public or private building, public or private institution, sanitorium, surgical institute, asylum, schoolhouse, theater, auditorium, hall, dormitory, place of assemblage, or public resort, store or storehouse, mills or manufacturing building, and all buildings used as a factory, mercantile or other establishment, and every public or private hotel, apartment, tenant or flat building, boarding house, lodging or sleeping house, shall be provided with standard fire escapes or other fire escapes equally as good, as hereinafter prescribed, to be located as remote from stairs as possible, and shall be easily accessible to all the occupants of the building without passing through living or sleeping rooms, or rooms which have locks or bolts that will fasten or otherwise obstruct it and with proper signs and red letters denoting the location of the fire escapes. The inspectors of buildings and chief of the fire department shall constitute a board to pass on fire escapes, and no fire escape shall be accepted without their approval, and they shall have the authority to decide the number and location of the same, and all fire escapes now or hereafter erected that shall become unsafe or in need of change or repairs the chief of the fire department shall serve notice to make such repairs or changes within the next ten days, and it shall be the duty of the owner, agent, proprietor, or manager of any such building to make such repairs or changes within the time as required by notice, and further the inspector of buildings and chief of the fire department shall have the authority in case of any fireproof buildings or other buildings that in their judgment they deem such escape not necessary in consequence of adequate provisions having been already made for the safety in case of fire, and in such case of exemption they shall give the owner of the building a written certificate to that effect and their reasons thereof if so desired.

And the certificate shall only be valid so long as the condition exists that the same was given under. The certificate shall be signed by the president of the board of commissioners of the city of Birmingham.

All buildings requiring standard fire escapes under this ordinance shall be of the following character of steel: Brackets one-half inch by two inches well braced and not more than four feet apart, brackets to extend through the walls with six-inch washers and nuts, lower part of brackets to extend in the wall two inches with a turn-down on the outside, and the brackets to be full width of the balcony. Balcony bottom rail two inches by two inches by one-fourth inch angle well bolted to brackets, bottom center rail to be one and three-fourths by one and three-fourths inch by one-fourth inch angle, balcony floor one inch by two inches

---

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by two inches apart riveted to bottom rail; top rail to be one and one-fourth inch by one and one-fourth inch by one-fourth; angle to extend through the wall with six inch washers and nuts. Corner post to be one and one-fourth by one and one-fourth inch by one-fourth inch angle well riveted to tops and bottom rails. Balusters to be one and one-fourth inch by one-fourth inch, three feet high, space not more than twelve inches on centers each way, well riveted to rails. Stair strings shall not be set at angle more than sixty degrees. No rise shall be more than fourteen inches. Stairs shall be well secured to platform using extra crossbars at bottom of stairs. All stairs shall have three-fourths inch handrail well braced. Drop ladders below balcony, when required, to be eighteen inches wide of one and one-half inch by three-eighths inch for sides three-fourth inch round, placed not over fourteen inches apart well screwed to sides. If required by the inspector of buildings stairs to be used to ground or landing, and made to raise or lower with weights or pulleys, as instructed. When required a ladder or stair to extend to roof well braced and extend over wall to roof and bolted to crosshead under joists, the side to be one-half inch by two inches, the rungs to be three-fourths inch round to be well riveted to sides and spaced not over fourteen inches apart. There shall be a balcony at each floor and a well hole of the proper size in each floor. No balcony shall be less than three feet wide and four feet long. Stairs shall not be less than eighteen inches. All persons whose duty it is to erect fire escapes shall submit drawings and specifications based upon the above sizes for an average fire escape, but if in the judgment of the inspector of buildings the above size is not sufficient for safety, they shall be increased. No fire escape shall be erected until plans and specifications have been approved by the inspector of buildings and a permit taken out for the same.

Tillman, Bradley & Morrow, of Birmingham, for appellant.

Percy, Benners & Burr and Harsh, Harsh & Harsh, all of Birmingham, and Knox, Acker, Dixon & Sims, of Talladega, for appellee.

ANDERSON, C. J. [1, 2] Count 1 of the complaint was not subject to defendant's demurrer. B. R., L. & P. Co. v. Buff, 77 South. 388.[1] Nor was count 5 subject to the demurrer. B. R., L. & P. Co. v. Milbrat, 78 South. 224.[2] Count 5 in the case at bar is not quite so broad in averment as was a similar count in the Milbrat Case, but it contains enough to show that the defendant was such an owner, proprietor, or manager of the building as contemplated by the statute under the construction given same in said case.

Count 6 is based upon an ordinance of the city of Birmingham there set out (and which will be set out in full by the reporter). The said ordinance first provides for standard fire escapes, or other fire escapes equally as good, upon the buildings there designated. It then creates a board to pass upon fire escapes, etc., and further provides that said

board "shall have authority in case of any fireproof buildings or other buildings that in their judgment they may deem such escape not necessary in consequence of adequate provisions having been already made for the safety in case of fire, * * * and in such case of exemptions they shall give the owner of the building a written certificate to that effect and their reasons therefor if so desired." This quoted provision is elliptical, and the words "to exempt the same" should appear as marked between the words "fire" and "and" to carry out the true meaning and intent of the provision as gathered from the context of same, and when considered in its entirety and the supplying of words in a statute or ordinance seem permissible in order to carry out the intent and to avoid repugnancy or inconsistency with such intention. Lewis' Sutherland, Statutory Construction, § 382. On the other hand, without this interpolation, this portion of the ordinance might be void for uncertainty, and the balance is so inseparable therefrom as to be thereby affected, as we cannot say that the ordinance would have been adopted without this provision; that is, that fire escapes would have been required in all events and upon all conditions had not the board been given the right to exempt some of the buildings. At any rate, counsel for both sides argue and treat the ordinance as we interpolate, and we will so consider it. It will be observed that, while the ordinance provides for fire escapes on all buildings of the class dealt with, and does not by its own force exempt any buildings, it gives the board the authority to exempt not only fireproof buildings, but all others which in their opinion do not need fire escapes. In other words, to sift it to a final analysis, it simply provides for fire escapes for the buildings dealt with unless the board in its judgment and discretion should deem the same unnecessary. Or, to express it differently, it in effect only requires fire escapes on all of such buildings as the board may deem necessary. In the case of City of Montgomery v. West, 149 Ala. 311, 42 South. 1000, the opinion, in quoting from Smith on Modern Municipal Corporations, §§ 526 and 530, says that—

"The ordinance must be impartial and general in its operation. So far as it restricts the absolute dominion of the owner over its property, it should furnish a uniform rule of action, and its application cannot be left to the arbitrary will of the governing authorities. * * * Ordinances which invest a city council, or a board of trustees, or officers, with a discretion which is purely arbitrary, and which may be exercised in the interest of a favored few, are unreasonable and invalid."

This quotation conforms to the rule declared in McQuillin on Municipal Corporations, § 728, Dillon (5th Ed.) § 598, and 19 R. C. L. § 118, p. 813, each citing our West Case

[1] 201 Ala. 94.    [2] 201 Ala. 368.

in support of same.   See, also, Talladega v. Sims, 8 Ala. App. 471, 62 South. 958, Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, and many cases cited in note 6, 19 R. C. L. to section 118, p. 813.   Our West Case is also reported in 9 L. R. A. (N. S.)' 659, 123 Am. St. Rep. 33, and 13 Ann. Cas. 651, wherein appear complete and exhaustive notes, citing numerous authorities on the subject, and while they are not entirely uniform, the weight and soundness seem to be with the West Case.   Moreover, many of those declaring to the contrary dealt with ordinances affecting liquor or other trades and subjects which could have been prohibited.   Such an ordinance as was dealt with by our own court in the case of Cooke v. Loper, 151 Ala. 546, 44 South. 78, and which was there differentiated from the West Case.   The ordinance in question is a flagrant infringement of the rule and must be declared void and of no effect, and the trial court erred in not giving the defendant's requested general charge as to count 6.

The ordinance here is quite different and involves a different principle from the statutes considered in the Whaley Case, 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499, and subsequent cases following same.   There the Legislature enacted the law regulating the subject with uniformity and without an arbitrary discretion as to the enforcement and administration of same, but merely delegated to another authority the fixation of a status upon which the law could operate.   It authorized no arbitrary discretion between those upon whom the law was to operate; simply delegated the authority of supplying the subject upon which the law should operate.   The principle involved in the Whaley Case is like unto the local option, stock, and tick laws, where the subject is dealt with and regulated, but it is left with the voters, boards, or certain named authorities to determine whether or not the subject shall come within the influence of the law.

We are also aware of the rule as laid down in the Milbrat Case, supra; that is, that an ordinance passed pursuant to express legislative authority will not be declared unreasonable; and we also cite to this effect the case of Lindsay v. Anniston, 104 Ala. 261, 16 South. 545, 27 L. R. A. 436, 53 Am. St. Rep.' 44.   We also think that section 1264 of the Code of 1907 expressly authorized so much of the ordinance as was considered in the Milbrat Case, and which is set out in the report of the case, but the authority expressed in said section of the Code did not justify the last part of the ordinance or the ordinance in its entirety.   It does not authorize the municipality to dispense with setting forth the subject upon which the ordinance is to operate or upon which it shall not operate, or the leaving of the enforcement of same to the arbitrary discretion of a board or officer,

even if the Legislature could have done so, which we do not decide.

[3] This holding is in no sense in conflict with the holding in the Milbrat Case.   There only the first part of the ordinance was presented and considered, and it was attacked upon points different from the one now involved, and we repeat that, if only so much of the ordinance as was there considered was the complete ordinance, it would not be subject to the infirmity then suggested, or now suggested.   True, the courts take judicial notice of all ordinances of the city of Birmingham.   Section 7, Acts 1915, p. 297;   Birch v. Ward, 75 South. 566.[3]   But this does not preclude the question here decided by the decision in the Milbrat Case, where it does not appear that the whole ordinance was brought to the attention of the court, or that the present objection to same was made or considered, and the present holding is in thorough accord with the Milbrat Case.

[4] It is suggested by the appellee's counsel:   First, that appellant, not having been exempted, cannot complain of the invalid part of the ordinance; and, second, that the invalid portion can be stricken and the balance upheld.   It is true we have a rule that he who can successfully complain of the validity of a statute or ordinance must be thereby affected, and had this appellant been exempted it doubtless could not complain, but it was not exempted, and is the proper one to complain of the arbitrary feature of the ordinance.   We are also aware of the fact that the books are full of cases where the invalid part of a statute has been stricken and the valid portion enforced, but in those instances the two were separable and independent, and were such laws as indicated that the valid portion would have been enacted regardless of the other part.   Here the invalid portion is inseparable from the valid portion to such an extent that, if it was stricken, it would make the ordinance operate in all buildings dealt with whether or no, notwithstanding the ordinance authorized exemptions.   The striking of the invalid portion would necessarily give the act a broader field of operation,   Wilkinson v. Stiles, 200 Ala. 279, 76 South. 45, and authorities there cited.

We do not think that the defendant was entitled to the general charge as to counts 1 and 5 as for a failure of proof, as this was a question for the jury.   Buff and Milbrat Cases, supra.

[5] The appellant insists that it was entitled to the general charge as to the whole case upon the idea that the intestate was, as matter of law, guilty of contributory negligence;   that, while the court held in the other cases that the question of contributory negligence was properly submitted to the jury, the evidence in this case is much stronger against this intestate.   We may concede that the notice given the intestate as to the

[3] 200 Ala. 118.

fire and the suggestion that he get out was, perhaps, a shade more insistent; still we think it was a question for the jury as to whether or not an ordinarily prudent person should or would have acted differently under the same circumstances. The witness Mc-Laren stated in substance:

"When I first heard of the fire I was in the power department room. Messrs. Kyser, Mc-Daniel, and Bell were also in said room. I heard the word 'Fire!' hollered by the negro elevator man. No one else told me there was a fire, and I did not hear any one else holler 'Fire!' I went out and investigated, and saw a small trickling smoke up the stairway, etc. I then went back there into the power department and gathered up a few articles, etc. When I went back in the room I told Mr. Kyser the building was on fire. He was at the desk or table by the window on Twenty-First street using the telephone. He nodded to me this way (illustrating) when I told him the building was on fire. He did not stop the conversation over the telephone; looked at me and nodded and continued his conversation. When I was gathering up my books I heard Bell tell Kyser, 'Kyser, the building is on fire; you better get out.' I didn't pay any attention to Kyser at that time. I was busy getting up these things. When I last saw him he was busy talking over the telephone. I spoke to Kyser and turned my back to him. I heard Bell make the same remark I did, and I didn't see Kyser or Bell after that."

It is true that a highly nervous or excitable person might have left the room immediately upon hearing of the fire. But Kyser was not informed as to the nature and location of the fire. He evidently knew that Mc-Laren had gone out to investigate, saw him return, and saw him loiter around getting up his books, etc., before leaving. Therefore, if McLaren, who had been out to investigate and who was Kyser's informant, remained in the room, this was a circumstance for the jury in determining whether or not Kyser knew or should have known that the danger was so imminent that he should have dropped the phone and immediately rushed out of the room. Again, it does not appear that Bell, the other person who warned Kyser, rushed out, but from aught that appears he remained in the room as long as or longer than Kyser, did, as McLaren left them both in there. They may have left together, or Kyser may have left first, and may have pursued a different course of escape, and the fact that the one taken by Bell led to safety while the one taken by Kyser led to eternity is by no means conclusive that Kyser tarried too long behind those who warned him and whose conduct was a circumstance which he probably had the right to consider. Moreover, it may be that Kyser was at the time being informed over the phone as to the fire, the nature and location of same, and may have been receiving directions as to the best way of escape. When informed of the fire, he showed no surprise or excitement, but gave a nod, indicating that he was aware of the fact, and it is possible that information was being imparted to him over the phone by some one on the outside who was instructing him as to his safety, etc. It was therefore a question for the jury to determine whether or not Kyser, the intestate, was guilty of contributory negligence.

For the error above designated, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.

On Rehearing.

ANDERSON, C. J. [6, 7] Upon a reconsideration of the ordinance, the court concludes that it does not give the fire board an arbitrary discretion in requiring or exempting buildings from fire escapes. The ordinance provides for certain kinds of fire escapes on all buildings over two stories high, except fireproof buildings or those which at the time had adequate escapes in case of fire. In other words, it deals with three classes, buildings over two stories high which have no adequate fire escapes, fireproof buildings, and buildings which already have adequate fire escapes, the last two being dealt with as exceptions from the ordinance, and the status upon which they are to be excepted is fixed by the ordinance itself, and the fire board is simply authorized to ascertain the status so fixed and to enforce the said ordinance. The board has no authority to exempt or discriminate in favor of or against buildings of the general class dealt with in the ordinance; that is, all buildings over two stories high not being fireproof or then having fire escapes. It is simply the duty of the board to ascertain fireproof buildings and to also determine whether or not others already have adequate fire escapes, and to so certify, and to compel fire escapes upon all buildings over two stories high that are not exempt by the terms of the ordinance; that is, which are not fireproof and which do not already have adequate fire escapes. An arbitrary discretion is one which discriminates between those of the same class or similarly situated, and the ordinance in question does not authorize the fire board to discriminate between buildings of the same class, but merely requires it to ascertain and determine which ones belong to the respective classes as fixed and defined by the ordinance. We therefore hold that the ordinance in question is not void, but should be upheld. Crumpton v. City of Montgomery, 177 Ala. 232, 59 South. 294; R. R. Commission v. Alabama Northern R. R., 182 Ala. 363, 62 South. 749; Whaley v. State, 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499; Wil-

son v. Eureka, 173 U. S. 32, 19 Sup. Ct. 317, 43 L. Ed. 603; Dotson v. La. Lbr. Co. (La.) 80 South. 205; Fischer v. St. Louis, 194 U. S. 370, 24 Sup. Ct. 673, 48 L. Ed. 1018; Ex parte Fiske, 72 Cal. 125, 13 Pac. 310; 6 R. C. L., under the head of "Constitutional Law," § 174; Arms v. Ayer, 192 Ill. 601, 61 N. E. 851, 58 L. R. A. 277, 85 Am. St. Rep. 357; Willy v. Mulledy, 78 N. Y. 313, 34 Am. Rep. 536; Sewell v. Moore, 166 Pa. 570, 31 Atl. 370. Where ordinances, like statutes, are susceptible of two interpretations, one of which will nullify same and the other sustain it, that interpretation should be given which will uphold it, notwithstanding the other may be the more natural. State ex rel. Collman v. Pitts, 160 Ala. 133, 49 South. 441, 686, 135 Am. St. Rep. 79. We do not mean to intimate that the interpretation now given is less natural and reasonable than the one previously given.

This ordinance is not so broad and general as the one considered in the West Case, supra, and can well be differentiated therefrom. There the ordinance made no attempt to classify or define the conditions under which the business could or could not be excluded, but gave the counsel the unbridled discretion of excluding or permitting the same without the fixation of a reasonable basis or classification.

[8] Nor are we persuaded that the ordinance should be stricken as unreasonable because it prohibits locks and bolts upon all doors to rooms which do not open into or front upon the passage, hallway, or other exit. Milbrat Case, supra; section 1264 of the Code; Lindsay v. Anniston, 104 Ala. 261, 16 South. 545, 27 L. R. A. 436, 53 Am. St. Rep. 44; McQuillin on Municipal Corporations, § 724, p. 261.

[9, 10] We cannot say that the defendant was entitled to the general charge, owing to a variance between the allegation and the proof, because only a part of the ordinance was introduced. As the whole ordinance was set out in the complaint, all, and not a part of it, should have been introduced, if the unnecessary act of introducing the same as evidence was attempted. This, however, if error, was error without injury, as the whole ordinance was just as much before the court as if it had been introduced in evidence; and the fact that a part of it was introduced did not prevent the court from taking notice of and considering the whole ordinance in trying the case and in giving and refusing charges, as the court had judicial notice of same. Acts 1915, p. 297, § 7; Birch v. Ward, 75 South. 566.[4] Neither was the defendant entitled to the general charge because the plaintiff did not prove each averment in the complaint as to the dereliction of the defendant with respect to the ordinance. This is not a case

where the plaintiff relied upon conjunctive acts as producing his cause of action, but where he set up a failure to comply with the different terms of the ordinance, and, while the requirements of the ordinance may have been set out in the conjunctive, proof of either substantial or material requirement would be sufficient. Segrest v. Roden Coal Co., 78 South. 756.[5] It is sufficient to say that there was proof showing no sign in red letters denoting the location of the fire escapes, though we do not mean to hold that the jury could not also have inferred from the evidence a noncompliance with the ordinance in other respects. What Matthews testified as to the inspection by himself and Bennett of the building and escapes amounted to no more than his evidence of the facts stated, as he gave no certificate of exemption as provided by the ordinance, and even if he had done so that would not have been conclusive against the defendant's liability.

[11] The defendant was not entitled to the general charge as to count 6, because added more than one year after suit was brought. It was within the lis pendens and related back. Section 5367 of the Code of 1907.

The application for rehearing is granted, the judgment of reversal is set aside, and the judgment of the trial court is now affirmed.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.

On Application of Appellant for Rehearing.

ANDERSON, C. J. We are still of the opinion that the ordinance is not void. It is true that the first or preamble part of the said ordinance provides for "standard fire escapes, or fire escapes equally as good"; but, when taken in its entirety, we do not think that it gives the fire commissioners an arbitrary discretion in the requirement of fire escapes. We think that the ordinance requires standard fire escapes to be placed on all buildings thereby included, except those which are fireproof or which had at the time standard fire escapes or escapes equally as good. In other words, it was the purpose of the ordinance to require standard fire escapes upon all buildings not fireproof or having good and sufficient fire escapes, and that the fire commissioners were merely charged with the duty of ascertaining the excepted class and requiring standard fire escapes on those buildings not excepted by the ordinance.

[12] Charge 9, requested by the defendant, was refused without error. It is argumentative and singles out a part of the evidence.

The application for rehearing is overruled.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.